THE BOARD OF EDUCATION OF COMMUNITY HIGH SCHOOL DIS-
TRICT No. 155, Petitioner, v. ILLINOIS EDUCATIONAL LABOR RELA-
TIONS BOARD *et al.*, Respondents.

First District (2nd Division)   No. 1—91—1144

Opinion filed May 18, 1993.

Vedder, Price, Kaufman & Kammholz, of Chicago (John A. Relias and C. Elizabeth Belmont, of counsel), for petitioner.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Alison E. O'Hara, Assistant Attorney General, of Chicago, of counsel), for respondent Illinois Educational Labor Relations Board.

Gregory J. Malovance and Gregory S. Folley, both of Winston & Strawn, and Felicitas Berlanga, of Illinois Education Association-NEA, both of Chicago, for other respondent.

JUSTICE DiVITO delivered the opinion of the court:

Petitioner Board of Education of Community High School District No. 155 (the District) filed a charge with respondent Illinois Educational Labor Relations Board (IELRB), alleging that respondent Community High School District No. 155 Education Association, IEA-NEA (the Union), had committed an unfair labor practice by demanding to arbitrate an inarbitrable employee grievance. The Union countered with its own unfair labor practice charge that the District could not refuse to arbitrate an arbitrable grievance. The

IELRB resolved the matter in favor of the Union, but this court reversed the IELRB ruling without reaching the merits. Meanwhile, however, the arbitrator had determined that the grievance was arbitrable, and the arbitration was held over the District's objection. The arbitrator found that the District had improperly evaluated the employee and awarded him damages. The District then refused to comply with the award, so the Union filed another unfair labor practice charge. The IELRB again ruled in the Union's favor, and the District again appealed. We affirm.

The employee was an untenured guidance counselor at a high school during the 1986-87 and 1987-88 school years. He received no evaluation at all for 1986-87, and his evaluation for 1987-88 allegedly did not conform with the procedures outlined in the parties' collective bargaining agreement (the Agreement). The employee was informed in March 1988 that on the basis of his evaluation results, his employment contract would not be renewed for the following year, thereby denying him tenure.[1]

One week later, the Union asked the District to agree "to submit the issue of evaluation as determining the employment status of [the employee] for 1988-89 to binding arbitration as contained in the grievance procedure." The District rebuffed the Union's request in April 1988, asserting that the grievance was not arbitrable. When the Union filed a formal arbitration demand in May 1988, the District stood its ground.

Months passed. On November 30, 1988, the District filed a charge with the IELRB alleging that the Union's persistence in its demand for arbitration of the inarbitrable grievance violated section 14(b)(3) of the Illinois Educational Labor Relations Act (Ill. Rev. Stat. 1987, ch. 48, par. 1714(b)(3)) (the Act). Nine days later, the Union filed its own charge. It claimed that the District's refusal to arbitrate the grievance violated section 14(a)(1) of the Act (Ill. Rev. Stat. 1987, ch. 48, par. 1714(a)(1)). The IELRB issued complaints against both parties and consolidated the cases. It concluded that the District had violated the Act because the grievance was arbitrable; it also found that the Union's charge was timely. (*Community High School District No. 155*, 5 Pub. Employee Rep. (Ill.) par. 1185, Nos. 89—CA—0021—C, 89—CB—0009—C (Illinois Educational Labor Relations Board November 8, 1989).) The District appealed on a

---

[1]Unless dismissed according to statutory procedures, a teacher who has been employed for two consecutive school terms "shall enter upon contractual continued service." Ill. Rev. Stat. 1991, ch. 122, par. 24—11.

number of grounds, but it did not challenge the IELRB's finding of arbitrability. On March 26, 1991, this court reversed, finding that the Union's charge had been untimely filed. *Board of Education of Community High School District No. 155 v. Illinois Educational Labor Relations Board* (1st Dist. 1991), No. 1—89—3304 (unpublished order under Supreme Court Rule 23) (*No. 155 I*).

Meanwhile, prior to the IELRB ruling, the arbitrator separately determined that the matter was arbitrable and ordered arbitration on the merits. Over the District's objection, the arbitration took place over two days in June 1989. Approximately five months later, just after the IELRB order in *No. 155 I*, the arbitrator issued his opinion and award on the merits of the grievance, finding that the District had committed multiple and "flagrant" violations of the Agreement's procedures in evaluating the employee. Having decided that the District had sole discretion over contract renewals for nontenured employees, however, he concluded that he had no power to order reinstatement. He therefore directed the District to compensate the employee "with salary in the amount of one (1) full year paid at the 1988-89 level of pay without any offsetting deductions," plus benefits, "to remedy the damage to [the employee's] professional integrity and standing which resulted from the Board's action."

The District refused to comply with the award, so the Union filed another unfair labor practice charge against the District, this time for violation of sections 14(a)(1), 14(a)(5) and 14(a)(8) of the Act (Ill. Rev. Stat. 1989, ch. 48, pars. 1714(a)(1), (a)(5), (a)(8)). The IELRB determined that the arbitrator had acted properly in conducting the arbitration prior to an IELRB decision on arbitrability. It then found that the IELRB hearing officer had applied the proper standard for analyzing the award; that the award did not conflict with section 24—11 of the School Code (Ill. Rev. Stat. 1987, ch. 122, par. 24—11); and that the arbitrator was not limited to a make-whole remedy but even if he were, the award was proper because it was compensatory, not punitive. The IELRB declined to revisit the question of substantive arbitrability, stating that it had already resolved the issue and suggesting that reconsideration might be improper, though it also remarked that it had been given no reason warranting reconsideration. It concluded that the award was binding and thus that the District, by refusing to comply with it, had violated section 14(a)(8) and, derivatively, section 14(a)(1) of the Act (Ill. Rev. Stat. 1987, ch. 48, pars. 1714(a)(8), (a)(1)). This appeal followed.

## I

We first address three preliminary matters, two of which concern the effect of *No. 155 I* on this appeal: whether the doctrine of *res judicata* bars the District from asking this court to review the IELRB's earlier decision on the substantive arbitrability of the grievance, and whether as a result of the reversal, the arbitrator had no jurisdiction over the grievance, rendering the award here to no effect. A related issue is whether the IELRB had the power to reconsider its prior determination that the grievance was arbitrable. Given our analysis, we need not rule on the last question.

## A

The Union and the IELRB contend that under the doctrine of *res judicata*, the District may not relitigate the issue of arbitrability. Citing *Staunton Community Unit School District No. 6 v. Illinois Educational Labor Relations Board* (1990), 200 Ill. App. 3d 370, 558 N.E.2d 751, the District replies that the earlier proceedings did not fix the rights and liabilities of the parties as to arbitrability because the IELRB made only an "initial" determination of arbitrability, allowing the District to raise the arbitrability issue again before the arbitrator.

The *res judicata* doctrine comprises two components. One bars "relitigation of a single cause of action between two parties [or their privies], extending to both causes actually litigated and those which might have been" (estoppel by judgment or *res judicata*); the other prohibits "relitigation of particular issues decided in another action between the same parties on a different cause of action" (collateral estoppel, estoppel by verdict, or issue preclusion). (*Cirro Wrecking Co. v. Roppolo* (1992), 153 Ill. 2d 6, 19-20, 605 N.E.2d 544, 552.) This doctrine applies even when, as here, the prior litigation occurs in administrative proceedings that are adjudicatory, judicial, or quasi-judicial in nature. *McCulla v. Industrial Comm'n* (1992), 232 Ill. App. 3d 517, 520, 597 N.E.2d 875, 878.

■ In *No. 155 I* and here, the parties are identical. In the prior appeal, the cause of action was an unfair labor practice charge for the District's refusal to arbitrate an arbitrable matter; in the case before us, the cause of action is an unfair labor charge for the District's refusal to comply with a binding arbitration award, to which the District has raised the defense of inarbitrability. In both cases, then, arbitrability was at issue and the District could have prevailed if the grievance was inarbitrable, so the causes of action are identi-

cal for *res judicata* purposes. (*Osborne v. Kelly* (1991), 207 Ill. App. 3d 488, 491, 565 N.E.2d 1340, 1342 (test is "whether the causes of action are based on common core of operative facts and whether the evidence necessary to sustain the second [outcome] would have sustained the first").) In the earlier case, however, the issue of arbitrability was actually litigated before the IELRB, which determined that the grievance was arbitrable. The District did not challenge the IELRB's ruling on this issue in its earlier appeal. By neglecting to do so, the District accepted that ruling as final, thereby extinguishing any right to challenge it here.[2] Our ruling does not conflict with *Staunton* because in that case, unlike this one, there was no prior appeal of an unfair labor practice charge, so the doctrine of *res judicata* did not come into play.

Even if the District had preserved the issue of arbitrability for this court's review, we find disingenuous the District's argument that the substance of the grievance was limited to the employee's termination and reinstatement. The District itself submitted as an arbitration issue "whether the evaluation of [the employee]'s performance conformed with the evaluation procedures." Thus, the District itself placed the issue of its violation of the evaluation procedures before the arbitrator. Furthermore, the arbitrator reached the question of reinstatement as a remedy only after he resolved that question. Therefore, the nonrenewal was not the substance of the grievance. For the same reason, we find unavailing the District's arguments that as a termination decision, the grievance was inarbitrable under the management rights provision in article X.A of the Agreement, in which the Union and the District agreed that the right to discharge personnel lies exclusively with the District, or under the School Code's provisions for nontenured employees.

### B

■ The District also argues that *Board of Trustees, Prairie State College v. Illinois Educational Labor Relations Board* (1988), 173 Ill. App. 3d 395, 527 N.E.2d 538, stands for the proposition that the IELRB has no power to order a school board to submit to

---

[2]We emphasize that had the District presented the issue of arbitrability to this court in *No. 155 I*, it would have preserved the right to present the question for our consideration here, given that our earlier reversal was based solely on the untimeliness of the charge. Were it otherwise, this court would have deprived the District of its right to judicial review of the IELRB's earlier ruling on substantive arbitrability merely because it ordered reversal on another, technical ground.

arbitration prior to deciding that an unfair labor practice has occurred. It extends *Prairie State*'s reasoning to mean that this court's earlier reversal of the IELRB's November 1989 order deprived the IELRB of any power to order arbitration, so the arbitrator here had no jurisdiction. Without such jurisdiction, the District reasons, the arbitrator had no power to render a binding award.

Without question, the IELRB generally has no power to order parties to halt unfair labor practices, including the power to order them to arbitrate, prior to finding that an unfair labor practice has occurred.[3] (Ill. Rev. Stat. 1991, ch. 48, par. 1715; *Prairie State*, 173 Ill. App. 3d at 410, 527 N.E.2d at 548.) By extension, reversal of the IELRB's earlier order here negated its power to order arbitration, which would nullify any resultant arbitration award. Had the arbitration proceeding here occurred pursuant to an IELRB order to arbitrate, we agree that the result of the reversal would be that the District could refuse with impunity to comply with the award. The same would hold true if this court had reversed the earlier IELRB order on the ground of inarbitrability.

As it happens, however, neither event occurred. Instead, the arbitration took place in June 1989, almost five months *prior* to the IELRB's original order, and this court reversed on technical grounds unrelated to the IELRB's arbitrability ruling, which, as noted above, this court was not asked to review. Because the District elected to participate in the proceeding prior to the IELRB decision, the District submitted to the arbitrator's power to render a binding award, subject of course to the arbitrability challenge, if preserved, and to any other objection it might have on the merits of the award. As a result, this court's reversal of the earlier unfair labor practice charge had no effect on the jurisdiction of the arbitrator, which was not dependent on the IELRB's order in *No. 155 I.*

## II

· The District couches much of its argument in objections to the award itself, but the issue before this court is somewhat different: whether the IELRB correctly found that the District committed the unfair labor practice of refusing to comply with a binding arbitration award. On direct review of an administrative ruling such as

---

[3]As the *Prairie State* court observed, however, the IELRB may exercise its statutory right to defer ruling on the substantive arbitrability of a grievance until after the arbitration has occurred. See Ill. Rev. Stat. 1991, ch. 48, par. 1714(a)(5).

this one, we are guided by Supreme Court Rule 335(h) (134 Ill. 2d R. 335(h)), which states that certain sections of the Administrative Review Law (Ill. Rev. Stat. 1991, ch. 110, par. 3—101 *et seq.*) apply here. In particular, section 3—110 defines our standard of review as follows:

"The hearing and determination [on review of any final administrative decision] shall extend to all questions of law and of fact presented by the entire record before the court. No new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the court. The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." Ill. Rev. Stat. 1991, ch. 110, par. 3—110.

Under this statute, a reviewing court will defer to the IELRB's factual conclusions, reversing only if the agency's decision was against the manifest weight of the evidence, that is, only if no rational trier of fact could have reached the challenged conclusion, looking at the evidence in the light most favorable to the agency. (*American Federation of State, County & Municipal Employees v. Illinois Educational Labor Relations Board* (1990), 197 Ill. App. 3d . 521, 525, 554 N.E.2d 476, 478.) If the question raised is purely legal, such as statutory construction, review is *de novo*, but courts will defer to an agency's construction of the statutes it administers unless the agency's interpretation is unreasonable or erroneous. *Press v. Code Enforcement Board of Appeals* (1992), 149 Ill. 2d 281, 285, 595 N.E.2d 1068, 1070.

That the administrative decision at issue is a ruling on the validity of the arbitrator's award complicates our review, for "a court's review of an arbitrator's award is extremely limited," and "a court must construe an award, if possible, as valid." (*American Federation of State, County & Municipal Employees v. State* (1988), 124 Ill. 2d 246, 254, 529 N.E.2d 534, 537.) This standard applies to the IELRB as well as to the courts. (*Board of Education of Danville Community Consolidated School District No. 118 v. Illinois Educational Labor Relations Board* (1988), 175 Ill. App. 3d 347, 353, 529 N.E.2d 1110, 1114 ("Neither IELRB nor reviewing courts have substantial authority to pass upon the propriety of the arbitrator's decision ***"), *appeal denied* (1989), 124 Ill. 2d 553, 535 N.E.2d 912.) When determining whether a party has violated the Act by refusing to comply with a binding arbitration award, the inquiry has three components: whether the award was binding; the

content of the award; and whether the party has complied with the award. (*Danville*, 175 Ill. App. 3d at 349-50, 529 N.E.2d at 1112.) The parties agree that only the first is at issue here.

■ Very few grounds exist for finding that a labor arbitration award is not binding. Such an award must be upheld so long as "the arbitrator acts within the confines of his jurisdiction, and his award draws its essence from the parties' collective-bargaining agreement, even when a reviewing court disagrees with the arbitrator's judgment on the merits." (*AFSCME*, 124 Ill. 2d at 254-55, 529 N.E.2d at 537-38, citing *United States Postal Service v. National Association of Letter Carriers* (D.C. Cir. 1987), 810 F.2d 1239, 1241.) In deciding whether an award draws its essence from the agreement, a court determines whether the arbitrator limited himself to interpreting the collective bargaining agreement; if not, the award violated the agreement to arbitrate. (*Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc.* (7th Cir. 1991), 935 F.2d 1501, 1505.) Among other grounds for vacatur of a labor arbitration award are that the award requires violation of the law, or that it contravenes a paramount consideration of public policy, as defined by the constitution, statutes, or if neither exists, judicial decisions. *AFSCME*, 124 Ill. 2d at 260, 263, 529 N.E.2d at 540, 541.

The District claims that the award does not draw its essence from the Agreement, because under article XI.F, an arbitrator may not decide issues other than those submitted in writing and here the arbitration demand asked only for reinstatement and back pay, limiting the arbitrator to that remedy alone. Even if the arbitrator could consider another remedy, the District continues, nothing in the Agreement permits an award such as this one, which was not make-whole contract damages but rather tort damages, and punitive ones at that. As such, the District argues, the award contravenes public policy in that punitive damages, generally disfavored, are even more inappropriate in labor relations, particularly against government employers. The District also contends that the award conflicts with statutory provisions concerning tenure-related rights, in violation of the Act.

### A

Although it is true, as the District contends, that the initial demand for arbitration sought only reinstatement and back pay, article XI.F of the Agreement instructs us that to determine what issues were within the arbitrator's province, we look only to the Agreement and the written questions submitted to him, not to

other documents such as the arbitration demand. The parties here were unable to stipulate to the issues the arbitrator was to decide, but their written queries as to remedy were similar in breadth: the District asked the arbitrator to decide whether the employee was entitled to "any remedy," and the Union asked him to decide "what is the appropriate remedy." The open-ended wording in these two submissions indicates no intention by either the District or the Union to confine the arbitrator to an award of reinstatement and back pay or nothing. Instead, from the broad wording of both parties' written submissions to the arbitrator, it is plain that the arbitrator had been given virtual carte blanche to fashion a suitable remedy. Moreover, the Agreement contains no provision limiting the remedial scope of the arbitrator.

To limit the arbitrator to a single remedy would be antithetical to the oft-acknowledged need for flexibility in fashioning arbitration remedies for violations of collective bargaining agreements. As the United States Supreme Court has held:

> " 'When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. *This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency.* Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." (Emphasis added.) *United Steelworkers v. Enterprise Wheel & Car Corp.* (1960), 363 U.S. 593, 597, 4 L. Ed. 2d 1424, 1428, 80 S. Ct. 1353, 1361, quoted with approval in *AFSCME*, 124 Ill. 2d at 254-55, 529 N.E.2d at 537-38.

See also *United Paperworkers International Union v. Misco, Inc.* (1987), 484 U.S. 29, 41, 98 L. Ed. 2d 286, 301, 108 S. Ct. 364, 372.

It is plain that the arbitrator here would have awarded reinstatement and back pay to the employee had he thought it was within his power, but he was dissuaded from doing so by the District. When the arbitrator here interpreted the collective bargaining

agreement and applicable statutes to bar him from awarding the most fitting remedy for a breach of a collective bargaining agreement, a circumstance not anticipated in the Agreement here, and fashioned a monetary substitute, he was merely exercising flexibility rather than "dispensing his own brand of industrial justice." Thus, this award, for other than reinstatement and back pay, does not run counter to the essence of the Agreement. Consequently, the IELRB correctly held that the arbitrator's remedial power was not limited to an award of reinstatement and back pay.

B

■ The District contends that even if reinstatement and back pay were not the only available remedy, surely the IELRB erred in ruling that the arbitrator had the authority to issue the award here, which the District characterizes as at best more than make-whole contract damages and at worst punitive damages in tort.

Although usually only contract remedies are available in civil actions for breaches of contract, noneconomic damages may be had if a breach of contract constitutes an independent tort as well. (*Morrow v. L.A. Goldschmidt Associates, Inc.* (1986), 112 Ill. 2d 87, 98, 492 N.E.2d 181, 184.) In the employment context, for example, an employee covered by a collective bargaining agreement who claims that his discharge was both a breach of the agreement and retaliation for filing a worker's compensation claim is not limited to contract remedies; he also can bring, without exhausting the arbitration process, a tort action in the circuit court for which punitive damages may be recovered. (*Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143, 473 N.E.2d 1280.) Had the employee here filed a civil suit against the District, however, the court could not have awarded punitive damages because the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1989, ch. 85, par. 2—102) bars punitive damages in tort actions against the government. (*Boyles v. Greater Peoria Mass Transit District* (1986), 113 Ill. 2d 545, 554, 499 N.E.2d 435, 439 (retaliatory discharge of government employee covered by collective bargaining agreement).) Because public policy, as expressed in the Tort Immunity Act, would preclude an award of punitive damages in a civil suit arising from this breach of the Agreement,

it follows that punitive damages would have been unavailable to the arbitrator here.[4]

This award, however, was not punitive. We begin with the plain wording of the award, in which the arbitrator stated that "the Grievant is entitled to a monetary award to *remedy* the damage done to his professional integrity and standing which resulted from the [District]'s action" and then "direct[ed] the [District] to *compensate* the Grievant." (Emphasis added.) From this language, it is readily apparent that the arbitrator's focus was on remedy and compensation, not on punishment.

In addition, we note that the purpose of contract damages is to compensate a nonbreaching party by returning him to the position he had prior to the breach. Here, before the improper evaluation and resultant termination, the employee had a conveniently located workplace and had been there for two years, making him eligible for tenure with its concomitant employment security. After the evaluation, however, he was obliged to take another position, for a lower salary and fewer benefits, with an inconveniently located school. This caused him to incur additional transportation and child care costs, and he no longer had the prospect of a tenure decision

---

[4]Given our analysis, we do not reach the more general question whether punitive damages would be available in labor arbitration with a nongovernmental employer. Just prior to oral argument of this case, *Edward Electric Co. v. Automation, Inc.* (1992), 229 Ill. App. 3d 89, 593 N.E.2d 833, was issued, in which the court held in a case of first impression in Illinois that punitive damages were not available in commercial arbitration absent a specific provision to the contrary in the parties' arbitration agreement. Whether the *Edward Electric* rule should apply in labor arbitration requires balancing the public policy favoring labor arbitration as a method of resolving collective bargaining agreement disputes fully and finally against the effect of a civil tort claim on the on-going relationship between employers and employees if a contract violation also forms the basis for a civil suit. Although "the award of punitive damages in the midst of a steady stream of arbitrations between a company and its unions might well undercut both sides' confidence in the arbitration process and decrease their commitment to this essential aspect of 'industrial self-government' " (*Raytheon Co. v. Automated Business Systems, Inc.* (1st Cir. 1989), 882 F.2d 6, 10, quoting *United Steelworkers v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 580, 4 L. Ed. 2d 1409, 1416, 80 S. Ct. 1347, 1351 (upholding punitive damages in commercial arbitration while distinguishing contrary decisions in labor arbitration)), we envision similar dangers from requiring employees to file separate tort actions in such cases. We observe that just as there may be a difference between commercial and labor arbitrations on this point, a matter we do not decide, so too may there be a difference between labor arbitration awards in the public and private sectors. Hodges, *The Steelworkers Trilogy in the Public Sector*, 66 Chi.-Kent L. Rev. 631 (1990).

in the near future. Furthermore, given the stigma that invariably accompanies termination, no matter how wrongful, the employee's professional reputation surely was sullied.

The remedy most likely to place the employee back in his prebreach position was reinstatement and back pay, but the arbitrator determined that this remedy was not available. Instead, the arbitrator awarded the employee a sum of money, which was not only for the economic damages that the employee had suffered, in the form of lost wages and benefits plus increases in travel and child care costs, but also for the loss of the opportunity for tenure and concomitant employment security and for the financial losses that he likely would suffer in the future. Even if there were no direct evidence of immediate, direct injury to the employee's reputation, we cannot say with assurance that the award was anything more than compensation for the economic injuries the arbitrator determined the employee had suffered and would continue to suffer in the future as a result of the District's breach. Accordingly, keeping in mind that a court must construe an arbitration award as valid, if possible, we hold that the IELRB correctly determined that the arbitrator's award was not punitive.

## C

■ The District also claims that the award is not binding because, contrary to the IELRB's finding, the award was a grant of "tenure-related employment rights in the nature of salary and employment benefits" under section 24—11 of the School Code (Ill. Rev. Stat. 1987, ch. 122, par. 24—11). We find nothing in this statute, which concerns the method by which a probationary employee is tenured or dismissed, that would cause us to view the monetary award here a "tenure-related employment right."

## III

The tortuous (and torturous) path of this case belies the notion that arbitration of labor disputes is a simple, informal, inexpensive, and expeditious method of resolving labor disputes. The evaluation at issue took place in 1988. The arbitration occurred in 1989. The IELRB order *sub judice* was issued in 1990. It is now 1993.

Here, the District should have either refused to arbitrate or gone forward with the arbitration on its merits while reserving its right to contest arbitrability and then refused to comply with the award on arbitrability and the other grounds it now raises. Although the latter course might have resulted in the arbitration of

an inarbitrable dispute, "[t]his method of review is not uncommon in labor law and conforms [to] the Act's stated goal of minimizing disputes and encouraging arbitration." (*Prairie State*, 173 Ill. App. 3d at 407, 527 N.E.2d at 546.) In addition, the District would have had to defend against only one, not two, unfair labor practice charges, and both the IELRB and this court would have reviewed this case only once and as a whole. Instead, the result here has been almost five years of piecemeal litigation. Worse yet, this case is not unique. *Board of Education of Du Page High School District No. 88 v. Illinois Educational Labor Relations Board* (1st Dist. April 27, 1993), No. 1—91—1144, *modified on denial of rehearing.*

The goals of the Act are not served when a party refuses to arbitrate, asks the IELRB to examine the question, appeals the IELRB's decision, arbitrates on the merits, refuses to comply with the award, asks the IELRB to declare the award not binding, and appeals that decision as well. We urge the legislature and the IELRB to establish a regime more in harmony with the Act's stated goal of prompt, fair, and final resolution of labor disputes.

For the reasons given above, we hold that the award was binding, and we therefore affirm the IELRB's order that the District committed an unfair labor practice by refusing to comply with it.

Affirmed.

McCORMICK, P.J., and HARTMAN, J., concur.