Satinder S. REKHI, Plaintiff–Appellee,

v.

**WILDWOOD INDUSTRIES, INCORPORATED, Defendant–Appellant.**

No. 95–1011.

United States Court of Appeals, Seventh Circuit.

Argued May 17, 1995.

Decided Aug. 4, 1995.

---

Mark D. Howard, Peoria, IL (argued), for plaintiff-appellee.

J. Reed Roesler, Keck, Mahin & Cate, Peoria, IL (argued), for defendant-appellant.

Before POSNER, Chief Judge, and COFFEY and ROVNER, Circuit Judges.

POSNER, Chief Judge.

The plaintiff, Rekhi, was employed by Wildwood Industries as vice-president of engineering under a five-year written contract, made in August of 1986, which entitled him to certain benefits if he was fired before the contract expired. He was fired two years after the contract was signed, and he filed a claim for $55,770 with the Illinois Department of Labor under the state's Wage Payment and Collection Act, Ill.Rev.Stat. ch. 48, ¶¶ 39m–1 *et seq.*, which creates a remedy for employees denied a contractual entitlement to wages or benefits. After a hearing, the Department determined that Wildwood owed Rekhi only $6,407.90. Dissatisfied, Rekhi brought suit in an Illinois state court against Wildwood for breach of contract. The court deemed the order to pay issued by the Department of Labor a judgment in an earlier suit between the same parties arising out of the same dispute, and therefore res judicata; and dismissed the suit. Rekhi appealed, and the Illinois Appellate Court reversed, holding that orders by the Department of Labor in

claims under the Wage Payment and Collection Act are not res judicata because the Department's proceedings under the Act are not judicial. 219 Ill.App.3d 312, 162 Ill.Dec. 375, 579 N.E.2d 1189 (1991).

Wildwood did not seek leave to appeal to the Supreme Court of Illinois, so the decision of the Illinois Appellate Court became final and the case returned to the trial court. Rekhi meanwhile had moved to a different state, and because he did not think the state trial judge friendly to his case he dismissed his suit voluntarily (and without prejudice) and refiled it in federal district court as a diversity suit. Wildwood moved the district judge for summary judgment on the ground that the Illinois Appellate Court had been wrong; the order by the Department of Labor was res judicata. The district judge denied the motion, holding that the ruling by the Illinois Appellate Court had established the "law of the case," which he was bound to follow. 816 F.Supp. 1312 (C.D.Ill.1993). The case proceeded to trial, and Rekhi obtained a judgment for $72,000 from which Wildwood appeals, arguing that the district judge should have granted summary judgment on the basis of res judicata.

That Illinois should (as it does, 735 ILCS 5/2–1009) countenance a procedure under which a party dissatisfied with the judge should be able to dismiss and start over after the judge has made a key ruling that has been appealed amazes us, and our amazement is lessened only slightly by the recent statute requiring the refiled suit to be filed within the period of the statute of limitations. 735 ILCS 5/13–217, as amended by the Civil Justice Reform Amendments of 1995, Ill.Pub. Act 89–7. It is not the only questionable feature of the dispute. That Wildwood, rather than seeking review of the Illinois Appellate Court's decision on an issue of state law in the supreme court of the state, should in fact though not in form seek that review in the federal courts, is an affront to federalism, although the primary fault may lie with Rekhi, who decided to start over in federal court. Even so, it is conceivable that Wildwood's oblique challenge to the state court's ruling in federal court could be blocked by an extension of the *Rooker–Feldman* doctrine, on

which see our recent discussion in *Hoover v. Wagner*, 47 F.3d 845, 848–49 (7th Cir.1995). Neither party mentions the doctrine, however, perhaps because it was Rekhi rather than Wildwood that initiated the switch to the federal court, cf. *Homola v. McNamara*, 59 F.3d 647, 649–50 (7th Cir.1995), though it is Wildwood that is asking the federal court to "reverse" the state court.

■ Now, strictly speaking, jurisdictional issues should be resolved ahead of issues on the merits. But when the former are difficult and the latter easy, it is permissible if inelegant and even "illogical" to skip to the latter, provided there is no practical difference in the outcome, and there would be none here. *Norton v. Mathews*, 427 U.S. 524, 532, 96 S.Ct. 2771, 2775, 49 L.Ed.2d 672 (1976); *Tisza v. Communications Workers of America*, 953 F.2d 298, 300 (7th Cir.1992); *United States v. Parcel of Land*, 928 F.2d 1, 4 (1st Cir.1991); *Browning–Ferris Industries of South Jersey, Inc. v. Muszynski*, 899 F.2d 151, 154–60 (2d Cir.1990). This doctrine, announced almost two decades ago in the *Norton* case, may be out of keeping with the Supreme Court's current thinking, which is more formalistic. But the Court has not repudiated the doctrine, and it is well established in the courts of appeals, including our own; so we should adhere to it at least until we have a clearer signal of the Court's current view.

One might think that when the case started over in federal district court Rekhi had a slam-dunk argument against Wildwood's defense of res judicata: that the ruling of the Illinois Appellate Court, at least when it became final upon Wildwood's failure to seek leave to appeal to the state supreme court, was itself res judicata as to Wildwood's defense of res judicata. The appellate court determined that orders by the Department of Labor in actions under the Wage Payment and Collection Act are not res judicata; Wildwood could have sought further review of that determination but did not do so; it should be barred from seeking to redetermine it now.

■ The more precise term for this argument is "collateral estoppel," that being the name of the part of the overall doctrine

of res judicata that limits the relitigation of specific issues ("issue preclusion" is the modern term, though it has not succeeded in displacing "collateral estoppel" entirely), as distinct from the relitigation of entire cases or claims ("claim preclusion"). Collateral estoppel applies to rulings of law as well as to findings of fact. That at least is the general rule—with immaterial exceptions, on which see *Restatement (Second) of Judgments* § 28(2) (1982)—and the rule applied in federal cases, *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414–15, 66 L.Ed.2d 308 (1980); *Martin v. Garman Construction Co.,* 945 F.2d 1000, 1004 (7th Cir.1991); *Dodd v. Hood River County,* 59 F.3d 852, 862 (9th Cir. 1995); *Apparel Art Int'l, Inc. v. Amertex Enterprises Ltd.,* 48 F.3d 576, 583 n. 9 (1st Cir.1995), although the doctrine is more often applied to factual than to legal issues. But since the effect of a state judgment in federal court depends on the state's rather than the federal law of res judicata and collateral estoppel, 28 U.S.C. § 1738, we must examine the Illinois cases, and here we find a division of authority. Compare *People v. Newman,* 163 Ill.App.3d 865, 114 Ill.Dec. 512, 516 N.E.2d 667 (1987), and *Oberman v. Byrne,* 112 Ill.App.3d 155, 67 Ill.Dec. 894, 898, 445 N.E.2d 374, 378 (1983), both holding that collateral estoppel does not apply to issues of law, with *Herriford v. Boyles,* 193 Ill.App.3d 947, 140 Ill.Dec. 769, 774, 550 N.E.2d 654, 659 (1990), and *Morris v. Union Oil Co.,* 96 Ill.App.3d 148, 51 Ill.Dec. 770, 774, 421 N.E.2d 278, 282 (1981), both holding that it does apply. These two lines of cases exist side by side; neither cites, or indicates any awareness of, the other. If we had to guess, we would guess that the Supreme Court of Illinois would follow the general rule. We so assumed in *Wozniak v. DuPage County,* 845 F.2d 677, 681–82 (7th Cir.1988); and cf. *Freeman United Coal Mining Co. v. Office of Workers' Compensation Program,* 20 F.3d 289, 293 (7th Cir.1994).

If so, it might seem to follow that since the ruling by the Illinois Appellate Court in Rekhi's first suit was based on a full and fair adjudication of an issue that had been ruled on with finality in a litigation between the same parties as in the later federal suit, the parties would be bound by that first ruling.

But there is a fly in this ointment. The ruling was not actually final, because it remanded the case, and hence was not a final judgment on the merits, which under Illinois law it had to be in order to be res judicata. *Relph v. Board of Education,* 84 Ill.2d 436, 50 Ill.Dec. 830, 832–33, 420 N.E.2d 147, 149–50 (1981); *In re M.B.,* 235 Ill.App.3d 352, 176 Ill.Dec. 454, 471, 601 N.E.2d 1152, 1169 (1992). These cases are explicit that an order remanding a case for further proceedings of (we assume) a more than ministerial character is not final. Yet they are cases in which the issue was res judicata, not collateral estoppel; and the requirement of finality is not always insisted upon in the latter type of case, *Amcast Industrial Corp. v. Detrex Corp.,* 45 F.3d 155, 158–59 (7th Cir.1995), although we cannot find an Illinois case on the point. If the ruling in the previous case was final in the sense of not tentative and not subject to further examination even though the case was being remanded, why should it not bind the parties? The remand is irrelevant.

 We needn't plunge deeper into this thicket. Collateral estoppel is a defense, and not a jurisdictional one, and it is waived by not being argued. Rekhi failed to argue collateral estoppel in the district court. Instead he argued law of the case. That doctrine limits redetermination of rulings made earlier *in the same lawsuit. Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 816, 108 S.Ct. 2166, 2177–78, 100 L.Ed.2d 811 (1988); *In re PCH Associates,* 949 F.2d 585, 592 (2d Cir.1991); *Vulcan Materials Co. v. Holzhauer,* 234 Ill.App.3d 444, 174 Ill.Dec. 665, 670, 599 N.E.2d 449, 454 (1992). We have two lawsuits here—the suit in the Illinois state court system and the suit in the federal court system. Rekhi wants to use a ruling in the first suit to preclude relitigation of an issue in the second. The doctrine that limits the relitigation of an issue in a subsequent suit, as opposed to a subsequent stage of the same suit, is collateral estoppel, not law of the case. It would be a different matter if Rekhi's state court suit had been removed or otherwise transferred to federal court. The doctrine of law of the case would apply, for it would be the same

suit, albeit in different courts. *Christianson v. Colt Industries Operating Corp., supra,* 486 U.S. at 816, 108 S.Ct. at 2177–78. But that is not what happened. Rekhi started over.

■ Rekhi has another bad argument, that the denial of Wildwood's motion for summary judgment (the ground of the motion being, the reader will recall, that the order to pay which terminated the Department of Labor's proceeding barred Rekhi's two lawsuits by res judicata) became moot when the case went to trial. Many opinions do say that denial of summary judgment is mooted by trial and judgment, e.g., *Watson v. Amedco Steel, Inc.,* 29 F.3d 274, 277–78 (7th Cir.1994); *Black v. J.I. Case Co.,* 22 F.3d 568, 570–71 (5th Cir.1994); *Bottineau Farmers Elevator v. Woodward–Clyde Consultants,* 963 F.2d 1064, 1068 n. 5 (8th Cir. 1992), but the contexts in which they say this are (with a single exception to be noted) remote from that of the present case. If the judge should have granted summary judgment for the defendant but did not, and the plaintiff went on to present at trial enough evidence to show that he is entitled to win his suit after all, this shows that the grant of summary judgment would have worked a substantive injustice. That is not a factor here. If the order by the Department of Labor was res judicata, barring Rekhi's effort to reinstitute his claim in the form of a lawsuit in state (or federal) court, then Wildwood had a substantive entitlement to head off Rekhi at the pass, no matter how much evidence Rekhi had that Wildwood really had fired him without cause. The injustice would be to allow Rekhi to relitigate an issue that the Department of Labor had decided adversely to him. Res judicata, like most defenses (statute of limitations is another example), would have no function if all it did was bar *meritless* suits; so it remains available as a defense even when the plaintiff, having survived summary judgment, goes on to win a judgment on the merits. *Davis v. United States Steel Supply,* 688 F.2d 166, 170 (3d Cir.1982) (en banc); *Clark v. Haas Group, Inc.,* 953 F.2d 1235, 1237, 1239 (10th Cir. 1992); *White v. Kelsey,* 935 F.2d 968 (8th Cir.1991); *Flores v. Edinburg Consolidated*

*Independent School District,* 741 F.2d 773, 775, 779 (5th Cir.1984).

■ Stated otherwise, the principle that an order denying summary judgment is rendered moot by trial and subsequent judgment on the merits is intended for cases in which the basis for the denial was that the party opposing the motion had presented enough evidence to go to trial. Defenses are not extinguished merely because presented and denied at the summary judgment stage. If the plaintiff goes on to win, the defendant can reassert the defense on appeal.

It is true that our very recent decision in *Allahar v. Zahora,* 59 F.3d 693, 695–96 (7th Cir.1995), holds (we believe for the first time) that to preserve for appeal a defense of res judicata that had been denied at the summary-judgment stage of the lawsuit, the appellant had to have renewed the motion during the trial. This holding has nothing to do with mootness, however. Mootness is not mentioned. The basis of the holding is not explained, but we take it that the animating concerns are to avoid surprise ("summary judgment was not intended to be a bomb planted within the litigation at its early stages and exploded on appeal," *Holley v. Northrop Worldwide Aircraft Services, Inc.,* 835 F.2d 1375, 1377 (11th Cir.1988)) and to give the district court an opportunity to correct its own mistakes. Rekhi does not argue that he was surprised to find Wildwood attempting to revive its defense of res judicata or that the district court should have been entitled to pass on the issue before we did. His argument is not that Wildwood should have reasserted the defense but that the defense became moot when summary judgment was denied. And that is wrong. If the defense had become moot, moreover, it could not have been revived—which shows that Rekhi's argument has nothing to do with what we take to be the grounds of the *Allahar* decision.

■ Luckily for Rekhi, he has one sound argument, which is that the Illinois Appellate Court got it right: under Illinois law, determinations by the Department of Labor under the Wage Payment and Collection Act, or at least the sort of determination the Department made here, do not have a preclusive

effect in subsequent suits. In so concluding, the Illinois Appellate Court relied on one of its previous decisions, *Miller v. J.M. Jones Co.*, 198 Ill.App.3d 151, 144 Ill.Dec. 461, 555 N.E.2d 820 (1990), and the two decisions together represent the entirety of the case law bearing directly on the issue. The issue is strictly one of Illinois law, since, as we have noted, a federal court is required to give the judgment of a state court the same preclusive effect that the courts of the state would give it. (Wildwood misses this point, citing decisions indiscriminately from diverse jurisdictions.) In default of a decision by the state's highest court, federal courts treat decisions by its intermediate appellate courts as authoritative, unless, as we saw earlier, a split among those courts makes such treatment impossible, or unless there is a compelling reason to doubt that the courts have got the law right. Neither condition is present.

▮ Illinois gives preclusive effect only to determinations made in adjudicatory proceedings, whether judicial or administrative, *Powers v. Arachnid, Inc.*, 248 Ill.App.3d 134, 187 Ill.Dec. 407, 410, 617 N.E.2d 864, 867 (1993); *Board of Education v. Illinois Educational Labor Relations Board*, 247 Ill. App.3d 337, 187 Ill.Dec. 61, 65, 617 N.E.2d 269, 273 (1993); *McCulla v. Industrial Commission*, 232 Ill.App.3d 517, 173 Ill.Dec. 901, 904, 597 N.E.2d 875, 878 (1992), and cardinal features of such proceedings, such as findings on contested factual issues, *Butler v. State Board of Elections*, 167 Ill.App.3d 35, 117 Ill.Dec. 700, 703–04, 520 N.E.2d 1051, 1054–55 (1988), are missing from the procedure that the Department of Labor utilized, or was required to utilize, in Rekhi's case. Compare Ill.Rev.Stat. ch. 48, ¶ 39m–11, with 820 ILCS 405/801, 1004. It is true that *Stafford v. Bowling*, 85 Ill.App.3d 978, 41 Ill.Dec. 273, 275–76, 407 N.E.2d 771, 773–74 (1980), says that the Department of Labor can make findings of fact in actions under the Wage Payment and Collection Act—can indeed, if it wants, "act like a court." *Id.* 41 Ill.Dec. at 276, 407 N.E.2d at 774. The Act does not, it is true, explicitly grant the Department any adjudicatory powers; the provision of the Act captioned "duties and powers [of the Department of Labor]" includes the power to institute a suit for violations of the Act, ¶ 39m–11(c) but not the power to conduct the suit. Yet it does authorize the Department to "order" an employer to pay wages due an employee, Ill.Rev.Stat. ch. 48, ¶ 39m–14, and perhaps it is implicit in this authorization that if there are material contested facts the Department must resolve them by employing the typical methods of adjudication, if those methods are necessary, in the circumstances, for a rational resolution of the contest.

▮ Perhaps—or perhaps not. Conceivably, the Department's orders have no binding force and simply bolster an employee's claim, in a subsequent suit under the Act, for punitive damages. See Ill.Rev.Stat. ch. 48, ¶ 39m–14(b); *Stafford v. Bowling, supra*, 41 Ill.Dec. at 275, 407 N.E.2d at 773. However that may be, under Illinois law as generally a determination is entitled to collateral estoppel effect only when the party opposing had a full and fair opportunity to litigate the issue, *Coronet Ins. Co. v. Booker*, 158 Ill.App.3d 466, 110 Ill.Dec. 616, 619–20, 511 N.E.2d 793, 796–97 (1987); *Bismarck Hotel Co. v. Sutherland*, 175 Ill.App.3d 739, 125 Ill.Dec. 15, 19, 529 N.E.2d 1091, 1095 (1988), that is, only when the tribunal that makes the determination is, in the words we quoted earlier from the *Stafford* opinion, "act[ing] like a court." Even if the Department of Labor could have acted as a court in Rekhi's case, there is no suggestion that it did, and its determination that Wildwood owed Rekhi only a meager sum was therefore not entitled to preclusive effect in Rekhi's lawsuits.

▮ An alternative ground for this conclusion proceeds from the fact that orders issued by the Department of Labor under the Wage Payment and Collection Act are not judicially reviewable under the state's Administrative Review Act. The Wage Payment and Collection Act does not say they are and under Illinois law it would have to for the Administrative Review Act to apply. 735 ILCS 5/3–102. From the inapplicability of the Administrative Review Act, the court in *Stafford v. Bowling, supra*, 41 Ill.Dec. at 275, 407 N.E.2d at 773, inferred that orders by the Department of Labor under the Wage

Payment and Collection Act are not judicially reviewable at all. This would be improbable, given the Department's statutory power to make orders that the employer is required to obey—if the employer really is required to obey them, which we said was uncertain.

In the federal system, when no specific method of obtaining judicial review of final orders by administrative agencies is prescribed by statute, an aggrieved party can still obtain judicial review, by bringing a declaratory or injunctive suit against the agency. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *Employers Ins. of Wausau v. Browner*, 52 F.3d 656, 662 (7th Cir.1995). We have not found any case under Illinois' Wage Payment and Collection Act where that was done. (There is no way to construe Rekhi's two suits as judicial review proceedings, since the Department was not named as a defendant; and anyway the diversity jurisdiction of the federal courts does not extend to judicial review of state administrative action. *Armistead v. C & M Transport, Inc.*, 49 F.3d 43, 47–48 (1st Cir.1995)—that would violate the *Rooker–Feldman* doctrine.) If that route is not open, the alternative may be, as implied in *Miller v. J.M. Jones Co.*, *supra*, 144 Ill.Dec. at 461–64, 555 N.E.2d at 820–23, that the parties to a dispute arising under the Act need pay no attention to the Department's order, but may litigate their dispute in court de novo, which is to say with no weight given to the order. If so, then it is all the more certain that a court in a subsequent lawsuit could not treat the order as conclusive on the rights of the parties.

■ But we have assumed that the only basis for giving the Department of Labor's order preclusive effect would be the doctrine of collateral estoppel; and for completeness of analysis we should interrogate that assumption. It could be argued—and is perhaps implied in Wildwood's brief, since neither party has drawn a sharp distinction between res judicata in the sense of claim preclusion and collateral estoppel (issue preclusion)—that Rekhi's complaint to the Department touched off a suit concluded by the order to pay, precluding any subsequent suit arising out of the parties' dispute over Rekhi's entitlement to wages and benefits arising from his dismissal, rather than precluding simply a redetermination of the amount owed. Res judicata in the sense of claim preclusion does not require that an issue actually have been litigated, but only that it could have been. *Torcasso v. Standard Outdoor Sales, Inc.*, 157 Ill.2d 484, 193 Ill.Dec. 192, 195, 626 N.E.2d 225, 228 (1993); *People v. Progressive Land Developers, Inc.*, 151 Ill.2d 285, 176 Ill.Dec. 874, 879, 602 N.E.2d 820, 825 (1992); *Jones v. City of Alton*, 757 F.2d 878, 884–85 (7th Cir.1985). If it could have been litigated, the failure to do so becomes a reason for rather than against preclusion. The very object of the doctrine of res judicata in its sense of claim preclusion is to prevent people from breaking up their claims into separate little pieces and trying to make each one the basis for a separate lawsuit.

■ The argument for claim preclusion in this case would be that any defect in the procedure leading up to the Department's order could be rectified on appeal and should not be subject to being attacked (or ignored) in a separate suit. But appeal how? We pointed out earlier that there are no cases in which an order issued by the Department has been the subject of a judicial review proceeding in the ordinary sense, that is, a proceeding in which the agency that issued the order is named as a defendant or respondent in a judicial proceeding in which the court is asked to set the order aside. The mode of review for such orders under Illinois law is, so far as we are able to determine, simply for the employee to sue the employer in state court (if as here the employee is dissatisfied with the order, or if the employer is dissatisfied and refuses to comply with it) and for that court in the course of the proceeding to determine de novo whether the order was correct.

Rekhi's suit was not blocked by res judicata or collateral estoppel, and the judgment in his favor is therefore

AFFIRMED.