FIRST DIVISION 
 SEPTEMBER 3, 1996








No. 1-95-2055


CITY OF CHICAGO, ) APPEAL FROM THE
 ) CIRCUIT COURT
 Petitioner-Appellee, ) OF COOK COUNTY.
 )
v. )
 )
AMERICAN FEDERATION OF STATE, )
COUNTY AND MUNICIPAL EMPLOYEES, )
COUNCIL 31, ) HONORABLE
 ) EDWIN M. BERMAN,
 Respondent-Appellant. ) JUDGE PRESIDING.

 PRESIDING JUSTICE CAMPBELL delivered the opinion of the
court:
 Plaintiff City of Chicago ("City") filed an application to
vacate an arbitration award decided in favor of defendant Ameri-
can Federation of State, County and Municipal Employees, Council
31 ("AFSCME") in a labor dispute. The circuit court of Cook
County granted the City's application. AFSCME now appeals.
 The record on appeal indicates the following facts. The
City is an employer and AFSCME is a labor organization that
entered into a collective bargaining agreement ("CBA") on
July 27, 1988. Section 1.2 of Article 1 the CBA generally
provides that "[t]he Employer will assign bargaining unit work to
bargaining employees only ***." However, section 1.2 also
provided as follows:
 "Nothing in this Section shall limit the
 Employer from subcontracting work to non-
 employees, except as this inherent right may
 be subject to specific limitation, if any, in
 this Agreement."
Article 22 of the CBA addressed the issue of subcontracting as
follows:
 "The Employer will attempt to have em-
 ployees perform bargaining unit work where
 practicable; however, the Employer reserves
 the right to contract out work for reasons of
 efficiency or economy. Prior to sub-con-
 tracting bargaining unit work, the Employer
 shall give notice of such contemplated action
 at least 30 days prior to entering into a
 sub-contract.
 "The notice shall be in writing and
 shall contain the name and address of the
 party who will perform the work, a descrip-
 tion of the work to be performed, any contem-
 plated impact on bargaining unit employees,
 and any other relevant data to enable the
 Union to discuss with the Employer alterna-
 tives to such action.
 "Upon request, the Employer shall meet
 with the Union within 3 days of such request.
 "If bargaining unit employees would be
 laid off by the proposed sub-contracting, the
 Employer shall make available, on a seniority
 basis, equal-rated permanent jobs the Employ-
 er has declared to be vacant in the Depart-
 ment, or other Departments, in that order,
 provided the laid off employees have the then
 present ability to perform the required work
 without further training. However, the em-
 ployee shall be provided with a reasonable
 amount of orientation to allow him or her to
 perform the work.
 "Prior to the sub-contracting of bar-
 gaining unit work, the Employer, the Union,
 and the proposed sub-contractor shall meet to
 discuss the employment of employees subject
 to layoff. The Employer will request that
 the sub-contractor hire laid off employees."
Among the employees covered by the CBA were security guards
working in the City's public library system, though such work was
also performed by off-duty police officers.
 This dispute involves the sub-contracting of work for
security guards at the Harold Washington Library, which was
opened in October 1991. During meetings in late 1990, the City
informed AFSCME that the City was considering sub-contracting the
security work at the new library. On May 8, 1991, after hearing
rumors that the work was going to be contracted out, AFSCME wrote
the City reminding the City of its obligations under Article 22
of the CBA. Although the City decided in May 1991 that the
security work would be contracted out, it did not execute a con-
tract for the work until September 16, 1991, when it signed an
agreement with Tishman-Midwest, a private firm which had submit-
ted the lowest bid to the City. Tishman-Midwest then entered
into a contract with B & D Services to provide the security. The
City did not notify AFSCME of the subcontract in writing until
September 27, 1991.
 By the time the Harold Washington Library opened, the City
had closed certain library facilities and had stopped using
certain other facilities as libraries. However, no City employ-
ees were laid off as a result of these changes.
 Pursuant to the CBA, AFSCME filed a grievance alleging that
the City had violated Article 22 of the CBA. The grievance was
processed under the terms of the CBA and ultimately proceeded to
arbitration on June 30 and September 23, 1990. 
 On February 14, 1994, the arbitrator issued an opinion and
award in favor of AFSCME. The arbitrator concluded that the City
had violated Article 22 of the CBA. The arbitrator then ad-
dressed the formulation of a remedy that would, as closely as
possible, restore the status quo ante. The arbitrator directed
the City to cancel the portion of its agreement with Tishman-
Midwest regarding security work at the Harold Washington Library. 
The arbitrator directed the City to submit the relevant contract
data to AFSCME and to meet with AFSCME within three days of
AFSCME's request.
 The arbitrator denied AFSCME's request to require that the
security guards at the Harold Washington Library be represented
by AFSCME and that the positions be accreted into the bargaining
unit. The arbitrator reasoned that such a remedy would deny the
City its right to sub-contract and would presuppose that AFSCME
would succeed in its effort to dissuade the City from sub-con-
tracting. Thus, the arbitrator concluded that such relief would
go beyond restoration of the status quo.
 However, the arbitrator further stated that merely requiring
the City to give notice and meet with AFSCME would not effective-
ly restore the status quo. Thus, in order to make AFSCME whole,
the arbitrator ordered the City to pay AFSCME a sum equal to what
it would have paid bargaining unit employees under the CBA (the
number of employees to be calculated by the percentage of library
security guards that fall under the CBA), increased by the amount
of union dues such employees would have paid AFSCME. This sum
was to accrue from the date the private guards were employed at
the library until the date the City complied with the require-
ments of Article 22. The arbitrator further directed that this
sum was to be distributed to the bargaining unit or "utilized by
the Union in the meeting process with the City under this
remedy." The arbitrator recognized that given the time elapsed
and the staffing requirements of the library, the award could be
"quite substantial," but stated that the relief was "required or
at least must be factored into the topics for discussion once the
parties meet ***."
 On May 13, 1994, the City filed its application to vacate
the arbitration award, alleging that the requirement that it pay
AFSCME what it would have paid bargaining unit employees under
the CBA, an amount allegedly exceeding one million dollars, was
punitive in nature. The City alternatively sought that only that
portion of the award be vacated.
 During argument on the matter, the trial court stated that
it did not understand the challenged portion of the award and
suggested remanding the matter to the arbitrator for clarifica-
tion. AFSCME argued that the damages were awarded in order that
AFSCME could exchange them for the City's agreement not to sub-
contract the work. The trial court stated that such a rationale
would be unacceptable, but entered an order vacating the chal-
lenged portion of the award and remanding the case to the arbi-
trator for clarification.
 On January 27, 1995, following the submission of supplement-
al memoranda, the arbitrator issued a supplemental opinion. The
arbitrator explained in part that
 "With the remedy I imposed, the Union would
 then be able to better discuss its requests
 with the City from a position of having some-
 thing to trade in its efforts to get through
 the discussion process what I would not give
 them -- the folding in of the guard positions
 at the Washington Library ***."
The arbitrator also wrote that
 "The remedy was, in labor relations
 terms, "make whole relief" -- a form of re-
 lief equivalent to compensatory relief. It
 was not intended to be punitive."
 On April 12, 1995, the City filed a motion in the circuit
court of Cook County to confirm the court's prior order vacating
the challenged portion of the award. The trial court granted
that motion on May 22, 1995. AFSCME filed a timely Notice of
Appeal to this court.
 I
 The primary issue on appeal is whether the trial court erred
in granting the motion to vacate the arbitration award. The
City's motion to vacate claimed that the portion of the award
representing what the City would have paid bargaining unit
employees under the CBA was a punitive award. 
 Initially, this court must address the standard of review. 
Section eight of the Illinois Public Labor Relations Act requires
that the arbitration provisions of a CBA of the sort at issue
here shall be subject to "the 'Illinois Uniform Arbitration
Act.'" (5 ILCS 315/8 (West 1992).) However, section twelve of
the Uniform Arbitration Act, as adopted in Illinois, provides in
part that the grounds for vacating an arbitration award under a
CBA shall be those which existed before Illinois adopted the Uni-
form Arbitration Act. (710 ILCS 5/12(e) (West 1992).) Accord-
ingly, our supreme court has stated in a case arising under the
Illinois Public Labor Relations Act that the arbitration award
must be enforced if the arbitrator acts within the scope of his
authority and his award draws its essence from the CBA. American
Federation of State, County and Municipal Employees v. State of
Illinois, 124 Ill. 2d 246, 254, 529 N.E.2d 534, 537 (1988).
 This court has held that punitive damages may be awarded in
arbitration, but only where the parties have expressly agreed to
the arbitrators' authority to award punitive damages. (Edward
Electric Co. v. Automation, Inc., 229 Ill. App. 3d 89, 105, 593
N.E.2d 833, 843 (1992).) Although Edward Electric Co. did not
involve a public employment CBA, the decision was based on
section 12(a)(3) of the Uniform Arbitration Act, as adopted in
Illinois, which provides that an award shall be vacated where the
arbitrators have exceeded their powers. See Edward Electric Co.
v. Automation, Inc., 229 Ill. App. 3d at 96, 593 N.E.2d at 837
(1992).
 In sum, an arbitrator who exceeds his or her authority
violates both the Illinois common law and statutory standards. 
Accordingly, it would appear that the rule established in Edward
Electric Co. is equally applicable in this case. The question of
whether the arbitrator exceeded his authority is one of law,
subject to de novo review; this court need not defer to the
determination of the trial court. Chicago Transit Authority v.
Amalgamated Transit Union, 244 Ill. App. 3d 854, 863-64, 614
N.E.2d 120, 126 (1993).
 On appeal, AFSCME does not contend that an award of punitive
damages was within the arbitrator's authority. Rather, AFSCME
contends that the challenged portion of the award was compensa-
tory, not punitive. Thus, this court must turn to the question
of whether the damages at issue were punitive or compensatory. 
 A
 AFSCME first argues that the award should be considered
compensatory under existing Illinois case law. AFSCME, citing
Kelsay v. Motorola, Inc., 74 Ill. 2d 172, 186, 384 N.E.2d 353,
359 (1978), maintains that the question is one of the "intent" of
the arbitrator. Kelsay does not directly refer to the "intent"
behind an award. Kelsay states that
 "Where punitive damages may be assessed, they
 are allowed in the nature of punishment and
 as a warning and example to deter the defen-
 dant and others from committing like offenses
 in the future." (Kelsay, 74 Ill. 2d at 186,
 384 N.E.2d at 359.)
In determining whether an award is punitive, this court generally 
begins by examining the plain wording of the opinion and award. 
See Board of Education v. Illinois Educational Labor Relations
Board, 247 Ill. App. 3d 337, 348, 617 N.E.2d 269, 277 (1993).
 In this case, the arbitrator stated in his supplemental
opinion that the award was not intended to be punitive. However,
in his initial opinion, the arbitrator not only referred to
restoring the status quo, but also quoted at length from Mil-
print, Inc., 51 Lab. Arb. (BNA) 749, 750-51 (1968)(Somers, Arb.),
including the following passage:
 "Insistence that the Company enter into dis-
 cussions with the Union now would not neces-
 sarily deter the Company from such contrac-
 tual violations in the future when sub-con-
 tracting arrangements are being considered. A
 remedy which involves no penalty or deterrent
 for the violator and no solace for the vio-
 lated can hardly be considered an appropriate
 remedy."
Thus, despite the arbitrator's protestations to the contrary in
his supplemental opinion, the award in this case initially was
justified in part as a "penalty or deterrent," which are precise-
ly the purposes of punitive damages as outlined in Kelsay. More-
over, the language quoted above distinguishes this case from
Board of Education, in which this court determined that the arbi-
trator's focus was on remedy and compensation, not on punishment. 
(Board of Education, 247 Ill. App. 3d at 348, 617 N.E.2d at 277.) 
During oral argument, AFSCME suggested that the arbitrator's
quotation of Milprint did not mean that the arbitrator agreed
with the reasoning therein. This argument is unpersuasive.
 The remaining Illinois cases cited by AFSCME do not address
the issue of whether an award was punitive in compensatory. Two
of those cases are cited for the proposition that an arbitrators
award is to be upheld even where it is irrational or incomprehen-
sible. However, where the bargaining agreement does not provide
for punitive damages, an award that is punitive is outside the
authority of the arbitrator, regardless of whether that award is
rational, comprehensible, or neither. 
 B
 AFSCME next cites a number of federal cases to argue that
the challenged portion of the award is a standard compensatory
award to remedy a breach of "meet-and-discuss" provisions such as
Article 22 of the CBA at issue. However, with one exception, all
of the cases AFSCME cites involve compensation awarded to employ-
ees injured by the employer. (See Local 879, Allied Industrial
Workers v. Chrysler Marine Corp., 819 F.2d 786, 788 (7th Cir.
1987) (imposition of severance plan the "most viable way of
affording employees *** meaningful relief"); Dreis & Krump
Manufacturing Co. v. International Association of Machinists and
Aerospace Workers, 802 F.2d 247, 249 (7th Cir. 1986) (arbitrator
ordered company to make laid off employee whole for wages and
benefits lost due to sub-contracting); United Electrical Radio
and Machine Workers of America v. Litton Microwave Cooking
Products, Litton Systems, Inc., 728 F.2d 970, 971 (8th Cir. 1984)
(arbitrator ordered Litton to grant employees a second paid
vacation); Desert Palace, Inc. v. Joint Local Executive Board,
679 F.2d 789, 793-94 (9th Cir. 1982) (arbitrator awarded cocktail
servers sum equal to tips servers should have received under
agreement).) In this case, the arbitrator made the award to the
Union, which was not required to distribute the funds to the
employees. This aspect of the award further suggests that the
award is punitive. (See, e.g., Island Creek Coal Co. v. District
28, United Mine Workers of America, 29 F.3d 126, 130-31 (4th Cir.
1994).) Even though the award gives AFSCME the option of dis-
tributing the funds to the employees, it cannot be characterized
as compensating the employees because: (1) there was no guaran-
tee that AFSCME would exercise that option; and (2) AFSCME has
failed to point to anything in the record indicating that the
existing employees lost wages or were otherwise damaged.
 The exceptional case AFSCME cites is Leona Lee Corp., 60
Lab. Arb. (BNA) 1310 (1972)(Gorsuch, Arb.), enforced Internation-
al Association of Heat and Frost Insulators and Asbestos Workers
v. Leona Lee Corp., 84 L.R.R.M. (BNA) 2165 (W.D. Tex. 1973),
aff'd 480 F.2d 1032 (5th Cir. 1974). In Leona Lee, the arbitra-
tor awarded the union dues and damages for a loss of bargaining
power; the award was upheld against the claim that the award was
punitive. However, Leona Lee is distinguishable on at least
three grounds. First, the Fifth Circuit apparently does not bar
arbitration awards of punitive damages, whereas some other cir-
cuits have barred such awards. (See Island Creek Coal Co., 29
F.3d at 131-32 & n.9.) Second, the award in Leona Lee was
apparently a lump sum in addition to dues. The award here was
based on the pay of hypothetical employees in addition to dues,
which may be construed as a double recovery (and perhaps punitive
as a result) because said dues would probably be included in such
pay. Third, like the Chrysler Marine Corp. decision, the employ-
er in Leona Lee had transferred its assets to a successor, a
factor which undoubtedly affects the bargaining power of a union
with a particular employer, but which does not exist in this
case. See Chrysler Marine Corp., 819 F.2d at 787; Leona Lee, 480
F.2d at 1033 n.2.
 AFSCME also cites a number of arbitration opinions that
purportedly support the award in this case. However, all of
these cases involve awards to employees, rather than the union. 
Moreover, none of these awards were judicially reviewed, which
makes them of limited value in this context.
 C
 AFSCME also argues that insofar as the award was intended to
restore the status quo ante, it is supported by decisions of the
National Labor Relations Board ("NLRB") and judicial decisions
enforcing or affirming NLRB decisions. The cases cited by AFSCME
involve the authority of the NLRB to remedy unfair labor prac-
tices; such remedies may include reinstatement of employees with
or without back pay. (See, e.g., N.L.R.B. v. Townhouse T.V. &
Appliances, Inc., 531 F.2d 826, 830 (7th Cir. 1976).) However,
these cases also establish that NLRB orders must be remedial, not
punitive. (See, e.g., Townhouse T.V. & Appliances, Inc., 531
F.2d at 830 (7th Cir. 1976).) Thus, it is not surprising that
these cases, like most of the others cited by AFSCME, involve
reinstatement or payments to employees or both, rather than
payment to the union.
 In sum, we conclude that the trial court did not err in
vacating the arbitration award, given the facts and circumstances
presented in this case.
 II
 AFSCME argues in the alternative that the trial court should
have remanded the matter to the arbitrator to conform the remedy
to the principles of compensation. AFSCME, citing Union Pacific
R.R. Co. v. United Transportation Union, 3 F.3d 255 (8th Cir.
1993), claims that in the absence of a remand, the contract
violation would go unremedied. There does not appear to be any
Illinois case law directly on point (including the one Illinois
case cited by AFSCME).
 It must be noted that the trial court vacated the entirety
of the arbitration award, not just the portion to which the City
objects. For example, the City did not challenge the award of
uncollected union dues. Indeed, the record shows that the trial
court previously had confirmed the other portions of the award. 
The record discloses no explanation for the trial court's revers-
al of opinion.
 Accordingly, we conclude that the trial court erred in
vacating the other portions of the arbitration award, given the
record on appeal. We also conclude that remanding the case to
the trial court for reinstatement of the other portions of the
award will obviate the need to remand the matter to the arbitra-
tor, as the parties did not dispute whether these portions of the
award were compensatory in this case.
 For all of the aforementioned reasons, the judgment of the
circuit court of Cook County is affirmed in part, reversed in
part, and remanded for reinstatement of the unchallenged portions
of the award, consistent with this opinion.
 Affirmed in part, reversed in part, and remanded.
 WOLFSON, J., and BRADEN, J., concur.