DAVID G. McCULLA, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Elk Grove Village Fire Department, Appellee).

First District (Industrial Commission Division)   No. 1—91—2844WC

Opinion filed July 31, 1992.

Williams & Marcus, Ltd., of Chicago (Robert B. Williams, of counsel), for appellant.

Wiedner & McAuliffe, Ltd., of Chicago (Frank J. Wiedner, of counsel), for appellee.

JUSTICE STOUDER delivered the opinion of the court:

The appellant, David G. McCulla (the claimant), sought benefits under the Workers' Compensation Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.1 *et seq.*) contending he suffered injuries arising out of his employment with the appellee, the Elk Grove Village fire department (the employer). The arbitrator found the claimant suffered an accidental injury on August 14, 1984, and awarded benefits. The Industrial Commission (Commission) reversed, finding the claimant's injuries were not causally connected to his employment. The Commission further found the causal connection issue was barred by the doctrine of *res judicata.* The circuit court confirmed and the claimant appeals.

The claimant testified he began working for the Elk Grove Village fire department on November 18, 1971. As a fire fighter the claimant performed such duties as rescues, ventilation, salvage and all other normal fire fighting operations. The claimant served as the "tiller man" on the back of the hook and ladder. The claimant testified in general terms that the work involved leading out hose lines, putting up ladders, ventilating roofs, etc.

He was promoted to fire officer or lieutenant in 1980 or 1981. Although this was a management position, the claimant contended he continued to perform all physical fire fighting duties. Again, the claimant testified in general terms to performing forced entry of overhead doors, rescues, hose work and all other fire fighting duties. The claimant's work schedule involved 24 hours on duty followed by 48 hours off duty. During the 24-hour on-duty period, the claimant testified he would be involved in some type of physical activity for 12 to 16 hours.

During the summer of 1984, the claimant experienced pain in his right knee. He also developed a cyst on the back of his right knee. On August 14, 1984, the claimant was seen by Dr. Rollo Nesset. The claimant testified that after the examination by Dr. Nesset he informed his supervisor of his condition. He could not recall which of his supervisors he told. He also testified he filed a "sick and injury" report.

During the late summer and fall of 1984, the claimant testified his condition grew worse. Nesset treated the claimant by draining the cyst on a number of occasions and injecting Celestone. The claimant noticed that on the days he worked his right knee would become more and more irritated, and he would limp as the day progressed. The condition would tend to alleviate during the subsequent 48-hour off-duty period.

Arthroscopic surgery was performed on November 26, 1984, followed by a period of physical therapy. After the claimant returned to work his condition once again began to deteriorate. A second surgery was performed on March 18, 1985, at which time the cyst in the right knee was removed. The claimant testified that soon after the second surgery on his right knee, he began experiencing problems with his left knee. Surgery was performed on the left knee on October 31, 1985. The claimant testified he has not worked since October 28, 1985. The claimant did not relate his knee problems to any specific work-related activity.

On cross-examination, the claimant testified that prior to becoming a fireman, he worked as a telephone installer for Illinois Bell. During part of this time his duties required him to be on his knees quite a bit. The claimant testified that as a fire fighter he would be on his knees three or four times a week. The claimant was not sure if he was scheduled to work on August 14, 1984.

The claimant testified he first noticed the cyst on the back of his knee while in Minnesota. The claimant was in Minnesota while he was having a home constructed. The claimant insisted he was not involved in the construction, although he did do some wiring. The claimant was in Minnesota for four or five weeks "prior to August" 1984. The claimant did not think the work he did on the home required him to be on his knees.

Dr. Nesset's report of his examination of August 14, 1984, states the claimant gave a history of having been in northern Minnesota "building a house up there for that period of time and doing a lot of heavy work, pushing wheelbarrows, etc."

The record shows the claimant had been treated for pain in his left knee in March of 1982. Radiology reports dated August 11, 1984, and October 17, 1985, revealed no evidence of fractures or dislocations, and no arthritic or other destructive processes in the claimant's knees.

In early 1986, the claimant was examined by at least two doctors in connection with proceedings before the Firemen's Pension Board of the Village of Elk Grove Village. Dr. Mark Gross recommended full disability because the claimant was suffering marked bilateral knee pain. There was no opinion as to the cause of the disability. Dr. Charles Magee could not give an opinion as to the claimant's disability because the claimant was still in the rehabilitative stage. In addition, Dr. Bernard Moore told the pension board that continuation as a fire fighter would only aggravate the claimant's condition.

During proceedings before the board, the claimant was asked if his injury occurred during any act of duty. The claimant responded that he could not say it was any specific day or call. On April 24, 1986, the pension board awarded a "not in duty" pension to the claimant pursuant to section 4—111 of the Illinois Pension Code (Ill. Rev. Stat. 1985, ch. 108½, par. 4—111).

As stated above, the arbitrator found the claimant suffered an accidental injury in the course of his employment as a fire fighter. After a lengthy discussion, the arbitrator found the doctrines of *res judicata* and collateral estoppel did not bar the claimant's claim. The Commission reversed, finding the claimant failed to prove a causal connection and, in the alternative, that the issue of causation was barred by the doctrine of *res judicata*. The circuit court confirmed and the claimant appeals.

On appeal, the claimant alleges the Commission erred in relying on the doctrine of *res judicata* to deny his claim. In actuality, the Commission relied on the collateral estoppel branch of the doctrine of *res judicata*.

■■ ■ Collateral estoppel prohibits the relitigation of an issue essential to and actually decided in an earlier proceeding by the same parties or their privies. (*Blair v. Bartelmay* (1986), 151 Ill. App. 3d 17, 502 N.E.2d 859.) Collateral estoppel may be asserted so long as the party against whom its application is sought is identical in both actions, and the party had a full and fair opportunity to contest an issue which was necessarily determined in the prior proceedings. (*Herriford v. Boyles* (1990), 193 Ill. App. 3d 947, 550 N.E.2d 654.) Generally, administrative agency decisions have *res judicata* and collateral estoppel effect where the agency's determination is made in proceedings which are adjudicatory, judicial or quasi-judicial in nature. *Godare v. Sterling Steel Casting Co.* (1981), 103 Ill. App. 3d 46, 430 N.E.2d 620.

In *Dempsey v. City of Harrisburg* (1971), 3 Ill. App. 3d 696, 279 N.E.2d 55, the plaintiff petitioned the police pension fund for a pension on the theory her husband lost his life "in the performance of duty." The plaintiff's husband, the chief of police for the City of Harrisburg, died after returning home from a late night emergency call. The plaintiff relied on the earlier decision of the Illinois Industrial Commission which found that the plaintiff's decedent had sustained accidental injuries arising out of and in the course of his employment resulting in his death. That decision had become final. The plaintiff asserted the Commission's decision was *res judicata* and binding on the pension board.

The pension board found the decedent did not lose his life in the performance of duty and denied benefits. The circuit court affirmed the decision of the board. A unanimous panel of the Appellate Court, Fifth District, reversed, finding the issues presented in both proceedings were for all intents and purposes identical. The Workmen's Compensation Act provided benefits for "accidental injuries arising out of and in the course of employment," while the Illinois Pension Code provided benefits for policemen who lost their lives "in the performance of duty." (*Dempsey*, 3 Ill. App. 3d at 696, 697.) The court found the workmen's compensation proceedings adjudicated all the factors necessary for a valid claim for a pension for loss of life in the performance of duty. In other words, the issue of causation was fully adjudicated in the workmen's compensation proceedings, and the city was precluded from relitigating that issue before the pension board.

In the instant case, the claimant petitioned the Firemen's Pension Board of the Village of Elk Grove Village for a pension. Following a hearing, the board awarded a "not in duty" pension to the claimant. A "not in duty" pension is awarded to those fire fighters who become disabled "as a result of any cause other than an act of duty." (Ill. Rev. Stat. 1985, ch. 108½, par. 4—111.) The claimant did not appeal from this determination.

■ In the claimant's subsequent workers' compensation action the issue of causation was raised before the Commission. We find no difference between the issue adjudicated before the pension board and the issue of causation subsequently before the Commission. The claimant had a full opportunity to adjudicate the issue of the work-related nature of his disability before the pension board. The pension board found his disability did not arise out of his duties as a fire fighter. He did not appeal this determination. Therefore, he is collaterally estopped from relitigating that issue before the Commission.

The claimant asserts the pension board did not consider the "cumulative effects" of his work in arriving at its determination. He further contends the record reflects the board did not understand the statutory provisions regarding cumulative effects. The claimant maintains his claim before the Commission of injury based on repetitive trauma is not the same as cumulative effects and therefore *res judicata* principles cannot apply.

First, whatever the pension board's understanding of the claimant's claim and any errors of law are not before this court. The claimant did not appeal the board's determination. Second, the claimant's theory of recovery in no way affects the basic finding of the pension board that the claimant's disability was not work related.

In addition, we find the claimant's reliance on *Godare v. Sterling Steel Casting Co.* (1981), 103 Ill. App. 3d 46, 430 N.E.2d 620, unpersuasive. In *Godare*, the issue was the nature and extent of the plaintiff's disability. The court found the standard applied in the workmen's compensation action was different from the standard utilized under the private pension agreement. In the instant case, there are no degrees of causation; either there was a causal connection between his disability or there was not. The pension board determined there was not, and that finding was not challenged on direct review.

In sum therefore, we find the issue of causation was fully adjudicated before the pension board and the Commission correctly found that it was bound by the pension board's determination. Finding as we do, we need not address the claimant's substantive contention on the issue of causation.

Therefore, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McCULLOUGH, P.J., and WOODWARD, H. LEWIS, and RAKOWSKI, JJ., concur.