No. 2--04--0990

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

KERRY A. DEMSKI, ) Appeal from the Circuit Court

) of Lake County.

Petitioner-Appellee, )

)

v. )

)

MUNDELEIN POLICE PENSION BOARD; ) No. 04--MR--306

THE VILLAGE OF MUNDELEIN; )

MUNDELEIN POLICE DEPARTMENT; )

RAYMOND J. ROSE, CHIEF OF POLICE )

OF THE MUNDELEIN POLICE DEPART- )

MENT; JAMES A. KEENEY; WALLACE )

FRASIER; and NICK POULOS, )

) Honorable

) Raymond J. McKoski,

Respondents-Appellants. ) Judge, Presiding.

______________________________________________________________________________

JUSTICE McLAREN delivered the opinion of the court:

The Mundelein Police Pension Board (Board), the Village of Mundelein (Village), the Mundelein police department (department), Raymond J. Rose, chief of the Mundelein police department (Chief Rose), James A. Keeney, Wallace Frasier, and Nick Poulos appeal the trial court's order reversing the Board's denial of Officer Kerry Demski's line-of-duty disability pension application.  We reverse.

The following facts are taken from the record.  On October 6, 1987, Demski became a member of the Mundelein police department. On October 27, 2002, Demski claimed she injured her back while performing sit-ups during a routine physical fitness agility examination.  The following day Demski worked at a Red Ribbon event with two other officers.  Two days later, Demski called in to the department, stating that she was unable to work due to the back pain.  Demski has not returned to her duties since the alleged injury.

Demski applied for workers' compensation benefits for her injury.  On August 13, 2003, a hearing was conducted before the Illinois Industrial Commission (IIC) on Demski's application for workers' compensation benefits.  After Demski and the Village presented evidence, the IIC arbitrator ruled that Demski was entitled to workers' compensation benefits and found "a causal connection between the agility test of October 26, 2002, and [Demski's] subsequent condition of ill-being."

Demski also filed an application for a line-of-duty pension.  Hearings on the application were held in December 2003 and January 2004.  The Village's petition for leave to intervene in the proceedings was granted.  Demski filed a petition seeking to invoke the doctrine of collateral estoppel, contending that the IIC's finding of causation was binding on the Board proceedings, but the Board denied Demski's petition.

During the hearings, Demski testified that she injured her back in 1993 when she lifted a box of D.A.R.E. workbooks out of her car.  She had surgery on her back in 1994 and returned to work full-time.  She injured her back again in 1999 after she lifted D.A.R.E. workbooks, but she returned to work after six months. In February 2001, she received a general order from the chief of police regarding physical fitness testing.  Demski believed that if she did not meet the standards set forth in the order, her job would be in jeopardy.  Demski stated that she took the agility test on October 26, 2002.  During the sit-up portion of the physical fitness agility test she injured her back.  As she performed a sit-up she felt a pull across her lower back.  She did not say anything to the examiners because she did not want to "come across as a weak officer."  She continued that part of the exam with discomfort in her lower back.  Demski knew that she could discontinue the test but chose to continue.  Demski stated that she was unable to pass the run portion of the test.

Demski testified that in both February and October 2001 she was unable to successfully complete the agility testing but suffered no disciplinary consequences.  Further, none of her superiors had ever spoken with her about the ramifications of  failing the agility test.  Demski knew of no one who had been dismissed for failing the agility test.  However, she knew the union was discussing a proposal to sanction officers who failed to adequately perform the test.

Sergeant John Monahan testified that he administered and observed Demski's agility test on the date in question and that she did not appear to have any problems with the test and did not complain of pain during the test.

Commander Michael Richards testified that the agility test was required of all officers.  However, at the time of Demski's alleged injury, no labor agreement was in effect that would have resulted in  disciplinary action for failure to complete the test.  In fact, several other officers had failed the test and had suffered no consequences.  The general order in effect in 2001 required an officer to participate in the agility assessment unless the officer was not medically able to do so.  In that case, the officer was required to try to complete the agility test again in six months, until the officer successfully completed the agility test.  There were no disciplinary consequences for failure to complete the test.  However, in 2003, after Demski's alleged injury, a labor union contract was enacted, providing for consequences if an officer failed to adequately perform the agility test.  The consequences included progressive disciplinary measures including the loss of income.

In support of her petition, Demski filed three certificates of disability.  The first certificate, submitted by Jay Levin, M.D., after examining Demski, indicated that Demski was disabled and that her disability was caused by the performance of an act of duty.  The second certificate, submitted by David L. Spencer, M.D., after examining Demski, indicated that Demski was disabled and that her disability was caused by the performance of an act of duty.  The third certificate, submitted by Thomas F. Gleason, M.D., after examining Demski, indicated that Demski was disabled and that her disability 
possibly
 was caused by the performance of an act of duty.

The Board denied Demski's line-of-duty pension application, finding that although she was disabled, her disability was not caused by the performance of an act of duty.  The Board reasoned that the testimony did not support a finding that the injury occurred during the physical agility test and that, even if it had occurred at that time, the agility test is not an "act of duty" within the meaning of section 3--114.1 of the Pension Code (40 ILCS 5/3--114.1 (West 2002)), and as defined by section 5--113 of the Pension Code (40 ILCS 5/5--113 (West 2002)).  The Board also found that the three certificates Demski filed in support of her petition were insufficient to establish a line-of-duty disability as required by section 5--115 of the Pension Code.  40 ILCS 5/5--115 (West 2002).

Demski sought review from the trial court. The trial court granted relief on two bases. First, the trial court determined that the Board was bound by the arbitrator's finding that Demski's injury was caused while performing an act of duty.  Second, the trial court held that the Board's finding was against the manifest weight of the evidence and that the physical agility test is an act of duty.  Respondents filed this timely appeal.

On appeal, the Board argues that it was not bound by the IIC's previous finding of causation.  In contrast, Demski argues that the Board was collaterally estopped from making its own finding regarding the cause of Demski's injury.  We agree with the Board.  The minimum requirements for the application of collateral estoppel are:  (1) the issue decided in the prior adjudication is 
identical
 to the one presented in the suit in question; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication.  
In re J'America B.
, 346 Ill. App. 3d 1034, 1042 (2004).

In this case, the first requirement has not been met.  The issue decided in the workers' compensation case was not identical to the issue decided in the pension application hearing.  The issue before the IIC was whether Demski's accident arose out of and in the course of her employment.  In contrast, the issue before the Board was whether the accident occurred during an "act of duty" as defined by section 5--113 of the Pension Code.  40 ILCS 5/5--113 (West 2002) (defined in part as: "Any act of police duty inherently involving special risk, not ordinarily assumed by a citizen in the ordinary walks of life").  Since this latter issue was not litigated during the workers' compensation case, the Board was not collaterally estopped by the arbitrator's findings.

Further, in this case, the third requirement of privity between the parties has not been met.  There is no evidence of any collaboration between the Village and the Board as to the workers' compensation case.  Further, the fact that both the Village and the Board are public entities is not enough to establish that they are the same parties or that they are in privity for the purpose of collateral estoppel.  See 
Rhoads v. Board of Trustees of the City of Calumet City Policemen's Pension Fund
, 293 Ill. App. 3d 1070, 1075 (1997).

Demski cites 
McCulla v. Industrial Comm'n
, 232 Ill. App. 3d 517 (1992), and 
Dempsey v. City of Harrisburg
, 3 Ill. App. 3d 696 (1971), to support her argument that collateral estoppel applies in this case.  However, these cases are distinguishable from the case at bar.  In 
McCulla
 the appellate court held that a fireman seeking workers' compensation was collaterally estopped by a prior firemen pension board's finding that the fireman's injury was not caused while performing an act of duty.  In this case, the issue of whether Demski's injury was caused while performing an act of duty had never been litigated.  Rather, the issue before the IIC was whether Demski's injury arose out of the course of her employment.  Thus, 
McCulla
 is not controlling here.

In 
Dempsey
, 3 Ill. App. 3d 696, the IIC found that a police chief's fatal injuries arose out of and in the course of his employment.  The police pension board then denied the police chief's widow's petition for a line-of-duty pension, finding that the police chief " 'did not lose his life in the performance of duty' " as contemplated by the Workmen's Compensation Act.  
Dempsey
, 3 Ill. App. 3d at 697.  The appellate court held that the IIC's finding had 
res judicata
 effect on the pension board.  However, in 1971, the issues presented in proceedings under the Workmen's Compensation Act and the Police Pension Fund were much more than similar than they are now.  The former provided benefits for " 'accidental injury arising out of and in the course of employment' "; the latter in the event " 'a policeman loses his life in the performance of duty.' "  
Dempsey
, 3 Ill. App. 3d at 698.  The legislature had not yet changed the latter statute to require an "act of duty" and had not yet defined "act of duty."  Thus, as 
Dempsey
 noted, "such differences [were] minuscule and not enough, by themselves, to reject application of 
res judicata
."  
Dempsey
, 3 Ill. App. 3d at 698.  Now, however, a police officer is entitled to line-of-duty benefits only if she becomes injured while on duty and was performing an act involving a special risk not shared by an ordinary citizen.  40 ILCS 5/5--113 (West 2002); 
Johnson v. Retirement Board of the Policemen's Annuity & Benefit Fund
, 114 Ill. 2d 518, 522 (1986).  Because the issues are now substantially different, 
Dempsey
 is not applicable to this case.

Addressing the second basis, the Board argues that the trial court erred by reversing its denial of Demski's line-of-duty pension application, because its finding that Demski was not injured while performing the agility test is not against the manifest weight of the evidence.  We agree with the Board.

On appeal, we review the decision of the administrative agency, not that of the trial court.  
Swoope v. Retirement Board of the Policemen's Annuity & Benefit Fund
, 323 Ill. App. 3d 526, 529 (2001).  An administrative agency's findings of fact are deemed 
prima facie
 true and correct and may be set aside only if they are against the manifest weight of the evidence.  
735 ILCS 5/3--110 (West 2000); 
Anderson v. Department of Professional Regulation
, 348 Ill. App. 3d 554, 560 (2004).  "Factual findings are against the manifest weight of the evidence only where all reasonable and unbiased persons would agree it is clearly evident the administrative agency erred and should have reached the opposite conclusion."  
Caterpillar, Inc. v. Illinois Commerce Comm'n
, 348 Ill. App. 3d 823, 828 (2004).  Thus, if the record contains any evidence to support the agency's decision, it should be affirmed.  
Abrahamson v. Illinois Department of Professional Regulation
, 153 Ill. 2d 76, 88 (1992).

The question before this court is whether the record contains any evidence to support the Board's finding that Demski was not injured while performing the agility test.  A review of the record reveals sufficient evidence to support the Board's finding.  Demski  injured her back in 1993 and again in 1999, years before the alleged injury at issue.  Sergeant John Monahan, who observed Demski as she took the test in 2002, testified that Demski failed to report any pain during the agility test and seemed to have no problems during the test.  She failed to tell anyone that she had injured herself during the test.  The day following the test Demski carried heavy objects.  One of the three required certifying physicians reported that it was only possible that Demski's injury was caused by the agility test.  Finally, all three of the certifying doctors noted that Demski had a long history of back problems and degenerative disc disease.  While this evidence does not absolutely preclude causation, and there is evidence to support Demski's position of causation, the record supports the Board's finding.  Thus, the Board's finding that Demski's injury was not caused by her performance of the agility test is not against the manifest weight of the evidence.

The Board also argues that the trial court erred by finding that the physical agility test is an act of duty.  However, we need not address this argument, because we have disposed of the appeal based upon the Board's proper decision regarding the cause of Demski's injury.

The judgment of the circuit court of Lake County is reversed.

Reversed.

O'MALLEY, P.J., and GROMETER, J., concur.