# Illinois Official Reports

## Appellate Court

---

### *Village of Alsip v. Portincaso*, 2017 IL App (1st) 153167

---

| | |
|---|---|
| Appellate Court Caption | THE VILLAGE OF ALSIP, Plaintiff-Appellee, v. JAMES PORTINCASO and THE BOARD OF TRUSTEES OF THE ALSIP POLICE PENSION FUND, Defendants (James Portincaso, Defendant-Appellant). |
| District & No. | First District, Fifth Division<br>Docket No. 1-15-3167 |
| Filed | May 5, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-CH-18605; the Hon. David B. Atkins, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | M. Neal Smith, of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Bolingbrook, for appellant.<br><br>James E. Thompson, of Law Offices of Joseph V. Roddy, of Chicago, for appellee. |
| Panel | JUSTICE HALL delivered the judgment of the court, with opinion.<br>Presiding Justice Gordon and Justice Lampkin concurred in the judgment and opinion. |

**OPINION**

¶ 1    This is an appeal from the final judgment entered on September 30, 2015, by the circuit court of Cook County, which reversed the Board of Trustees of the Alsip Police Pension Fund's award of a line-of-duty disability pension to plaintiff James Portincaso.

¶ 2    On appeal, the parties raise several issues for review; however, we only address the dispositive issues of (1) whether the Board of Trustees of the Alsip Police Pension Fund (Pension Board) abused its discretion in denying the Village of Alsip's (Village) petition to intervene, and (2) whether the decision in the Illinois Workers' Compensation Commission (Commission) litigation precluded the redetermination of whether James Portincaso was injured on December 11, 2010. Because we answer both questions in the affirmative, we recite only those facts relevant to the disposition of these issues.

¶ 3                          BACKGROUND

¶ 4    James Portincaso has been a member of the Alsip Police Department since November 4, 2000. On December 11, 2010, Portincaso responded to a domestic violence call. Once on the scene, an intoxicated man charged his father, and Portincaso physically intervened. As a result, both the man and Portincaso fell to the ground and a struggle ensued. Portincaso called for assistance over the police radio, and eventually, he and another officer were able to arrest the intoxicated man. The following morning, Portincaso awoke with back pain and proceeded to visit his chiropractor.

¶ 5    On March 25, 2011, Portincaso filed a claim for benefits under the Workers' Compensation Act (Compensation Act) (820 ILCS 305/1 *et seq.* (West 2010)). The Village challenged Portincaso's claim that he was entitled to workers' compensation benefits, and on September 20, 2011, the arbitrator ruled in favor of the Village finding, *inter alia*, that Portincaso's "condition of ill-being" was not causally related to the 2010 arrest. Subsequently, Portincaso appealed the arbitrator's decision to the Commission. The Commission affirmed the arbitrator's decision, and the circuit court entered a judgment confirming the Commission's decision. Portincaso responded by appealing the circuit court's judgment in *Portincaso v. Illinois Workers' Compensation Comm'n*, 2014 IL App (1st) 130468WC-U .

¶ 6    During the pendency of his workers' compensation case, Portincaso submitted his application for disability pension benefits to the Pension Board on February 21, 2012, for injuries allegedly sustained during the 2010 arrest. The Pension Board proceedings began on June 19, 2013, and the Village filed its petition to intervene on June 26, 2013. The Village claimed that it had not received notice of the proceedings until after the first day of hearings, and it sought intervention for the purpose of presenting evidence that Portincaso's injury was not duty related and was not related to his employment. In response, Portincaso argued that the Village's petition was untimely and failed to demonstrate any basis for intervening or that its interests would be adversely affected by a ruling from the Pension Board. Portincaso also contended that any findings by the Commission could not have any collateral estoppel effect on his application for a line-of-duty disability pension.

¶ 7    On February 27, 2014, the Pension Board voted to deny the Village's petition to intervene. On March 3, 2014, the reviewing court affirmed the Commission. See *Portincaso*, 2014 IL App (1st) 130468WC-U. Subsequently, on March 26, 2014, the Village filed a combined

motion for reconsideration and a motion to dismiss on the basis of collateral estoppel. The Village claimed it had a substantial interest in the proper expenditure of public funds and in not becoming liable for remuneration under the Public Safety Employee Benefits Act (Benefits Act) (820 ILCS 320/1 *et seq.* (West 2012)). The Village also contended that Portincaso was collaterally stopped from relitigating the issue of whether his injuries were a result of the 2010 arrest; in support of its contentions, the Village attached a copy of the arbitrator's decision and the order that had been issued by the reviewing court in *Portincaso*, 2014 IL App (1st) 130468WC-U, to its combined motion.

¶ 8  On May 1, 2014, the parties appeared before the Pension Board and argued the merits of the Village's motions. The Pension Board called a vote on the Village's motion to intervene which ended in a 2-2 tie. In response, the Village renewed its motions for the next hearing date when all five members of the Pension Board would be present. On June 18, 2014, the Pension Board called another vote and voted to deny the Village's motion for reconsideration. In reaching its decision, the Pension Board found Portincaso's injury to be related to his employment, that he was injured in an "act of police duty inherently involving special risk not ordinarily assumed by a citizen in the ordinary walks of life." The Pension Board also concluded that the Village's motion to dismiss was moot because the Village was not a party to the proceeding and lacked standing to bring the motion. On November 18, 2014, the Village sought administrative review, and on September 30, 2015, the circuit court reversed the Pension Board's decision. *Village of Alsip v. Portincaso*, No. 14-CH-18605 (Cir. Ct. Cook Co.). The circuit court found Portincaso's line of duty award was premised on the finding that his injuries arose out of the 2010 arrest, which had already been litigated in front of the Commission. As a result, the circuit court found collateral estoppel applied to bar Portincaso from relitigating the question of whether he was injured during the 2010 arrest in front of the Pension Board. The circuit court declined to address the issue of whether or not the Village should have been permitted to intervene. Subsequently, Portincaso filed his notice of appeal on October 30, 2015.

¶ 9            ANALYSIS

¶ 10         I. Standard of Review

¶ 11  Our review of the Pension Board's decision is governed by the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2014)). 40 ILCS 5/3-148 (West 2014); *Village of Stickney v. Board of Trustees of the Police Pension Fund*, 347 Ill. App. 3d 845, 848 (2004). On appeals from administrative review proceedings, this Court reviews the decision of the administrative agency, not of the circuit court. *Illinois Health Maintenance Organization Guaranty Ass'n v. Department of Insurance*, 372 Ill. App. 3d 24, 31 (2007); see also *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 504 (2007). Where there is no question of fact, and the issue is solely one of law, we review the agency's decision *de novo*. *Stickney*, 347 Ill. App. 3d at 848 (citing *Martino v. Police Pension Board*, 331 Ill. App. 3d 975, 980 (2002)). However, where an issue on appeal involves an exercise of the administrative agency's discretion, we review the administrative agency's decision for an abuse of discretion. *Id.* at 852.

¶ 12  In the present case, the two threshold issues presented for review are (1) whether the Pension Board erred when it denied the Village's petition to intervene, and (2) whether the Pension Board erred when it determined that the requirements for collateral estoppel were not

met. Since the first question involves an exercise of the Pension Board's discretion, our standard of review is the abuse of discretion standard. *Id.* The latter question is one of law and is subject to *de novo* review. *Id.* at 848.

¶ 13                                   II. Discussion

¶ 14       In general, collateral estoppel is an affirmative defense which must be pleaded by a party to be available. *Midwest Physician Group, Ltd. v. Department of Revenue*, 304 Ill. App. 3d 939, 952 (1999); see *Waste Management of Illinois, Inc. v. Pollution Control Board*, 187 Ill. App. 3d 79, 83, (1989) (citing *Hoover v. Crippen*, 163 Ill. App. 3d 858, 864 (1987)). Thus, it is necessary that this Court first resolve the issue of whether the Village should have been permitted to intervene in the Pension Board proceedings.

¶ 15                               A. Petition to Intervene

¶ 16       Section 3-101 of the Illinois Pension Code (Pension Code) (40 ILCS 5/3-101 (West 2014)) entrusts the Pension Board with establishing and administering a police pension fund. *Stickney*, 347 Ill. App. 3d at 852. Included within the Pension Board's power to administer the fund is the power to exercise its discretion in deciding whether to allow a party to intervene. *Id.* at 851; *City of Benton Police Department v. Human Rights Comm'n*, 160 Ill. App. 3d 55, 57 (1987). A board's exclusive authority to control the pension fund and disability payments also includes the power to conduct the hearings and the discretion to decide who can participate in those hearings and to what extent. See *Stickney*, 347 Ill. App. 3d at 852. Although the Pension Board is vested with such authority, a board must exercise its discretion with care. See *Stickney*, 347 Ill. App. 3d at 852; see also *Williams v. Board of Trustees of the Morton Grove Firefighters' Pension Fund*, 398 Ill. App. 3d 680, 687 (2010). Further, the board's discretion is not unlimited because it can be abused. *Williams*, 398 Ill. App. 3d at 688-89.

¶ 17       An abuse of discretion occurs where an administrative body acts arbitrarily or capriciously. *Id.* An action is arbitrary and capricious only if the administrative body contravenes the legislature's intent, fails to consider a crucial aspect of the problem, or offers an explanation which is so implausible that it runs contrary to agency expertise. See *Gruwell v. Department of Financial & Professional Regulation*, 406 Ill. App. 3d 283, 295 (2010) (citing *Deen v. Lustig*, 337 Ill. App. 3d 294, 302 (2003)).

¶ 18       On appeal, Portincaso contends that the Pension Board correctly denied the Village's petition to intervene on the basis that the Village's interests would not be adversely affected. He contends that the Pension Board did not abuse its discretion because the Village failed to offer the Pension Board any legitimate interest warranting intervention, and it failed to provide new relevant evidence to assist the Pension Board in deciding the matter. We disagree.

¶ 19       The record reflects that the Village sought intervention for the purpose of ensuring that public funds were not paid to police officers who are ineligible for benefits, to present evidence that Portincaso's injury was not duty related, and to present evidence that his injury was not related to his employment. The Village later argued in its motion for reconsideration that it had a substantial interest in the proper expenditure of public funds and in not becoming liable under the Benefits Act. Courts have acknowledged that protecting a municipality's interest in the proper expenditure of funds may be a sufficient basis for permitting intervention when combined with another interest. See *Williams*, 398 Ill. App. 3d at 689; see also *Coyne*, 347 Ill. App. 3d at 716.

- 4 -

¶ 20    In *Williams v. Board of Trustees of the Morton Grove Firefighters' Pension Fund*, the plaintiff argued that allowing the village to intervene was an abuse of discretion because the village did not have a legitimate reason. *Williams*, 398 Ill. App. 3d at 687. In support of its petition to intervene, the village offered three reasons. First, it argued that it had an interest in ensuring the proper expenditure of public funds by the pension board and in making sure those funds were expended appropriately only for those firefighters who were entitled to pension benefits. *Id.* at 684. Second, the village argued that its interest in the potential award of health insurance benefits to plaintiff and his family under the Benefits Act supported its petition to intervene because it would be financially responsible if plaintiff received benefits under the Benefits Act. *Id.* Third, it asserted that it had an interest in developing a full evidentiary record on which the board would base its decision. *Id.* The village stated that it would call witnesses to offer medical testimony regarding plaintiff's injury and alleged disability, cross-examine the witnesses, and obtain legible copies of certain documents and additional documents to supplement the exhibits prepared by the board. *Id.* Consequently, the reviewing court ruled in favor of the defendant and found no abuse of discretion. *Id.* at 690.

¶ 21    Similarly, in *Coyne v. Milan Police Pension Board*, the board granted a village's petition to intervene where the village cited the following two bases in support of its intervention: (1) to protect its interest in the expenditure of its pension funds and (2) because the applicant was the subject of a union grievance involving similar issues. *Coyne*, 347 Ill. App. 3d at 716. We find the reasons proffered in *Coyne* and *Williams* to be virtually identical to those submitted in the case before this Court; therefore, we conclude that the Village proffered legitimate interests warranting intervention.

¶ 22    Next, we turn to Portincaso's argument that the Village failed to provide new and relevant evidence to assist the Pension Board in making its decision; on review of the record, we find this argument unpersuasive. The record demonstrates that the workers' compensation decision was affirmed by the reviewing court on March 3, 2014, four days after the Pension Board denied the Village's petition to intervene. Subsequently, the Village filed its combined motion to reconsider and motion to dismiss contending that the recent decision in the workers' compensation case precluded relitigation of whether Portincaso's injury was a result of the 2010 arrest. On May 1, 2014, the parties appeared before the Pension Board and argued the merits of the Village's motion to reconsider. Afterwards, the Pension Board voted on the motion, and the vote ended in a tie. In response, the Village orally renewed its combined motion to reconsider and motion to dismiss so that it could be voted on at a later date when all five members of the Pension Board could be present. At this time, Portincaso had not yet filed a petition for leave to appeal the workers' compensation decision to the Illinois Supreme Court. See Ill. S. Ct. R. 315(b) (eff. July 1, 2013) (petition for leave to appeal must be filed within 35 days of entry of appellate court's judgment). That decision became a final unappealable judgment on the merits on April 7, 2014. See *Ballweg v. City of Springfield*, 114 Ill. 2d 107, 113 (1986) (for purposes of collateral estoppel, a judgment is not final until the potential for appellate review has been exhausted). Therefore, we find the potentially preclusive effect of the workers' compensation decision was new and relevant evidence as it pertained to the Pension Board's determination as to whether Portincaso's injury was a result of the 2010 arrest.

¶ 23    Next we examine the Pension Board's basis for denying the Village's petition to intervene. In its written decision and order, the Pension Board concluded that the Village's interests would not be adversely impacted by the proceedings.

¶ 24    The law is well settled that when a police pension board awards a line-of-duty pension to an applicant, such applicant becomes eligible to pursue Benefits Act health insurance benefits. In *Village of Vernon Hills v. Heelan*, 2015 IL 118170, the Illinois Supreme Court reaffirmed its holding, previously expressed in *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 400 (2003), and *Nowak v. City of Country Club Hills*, 2011 IL 111838, ¶ 12, that a pension board's award of a line-of-duty disability police pension establishes as a matter of law that the employee suffered a "catastrophic injury" as required to receive the Benefit Act's health insurance benefits. *Village of Vernon Hills*, 2015 IL 118170, ¶ 25. Without the Pension Board's determination that Portincaso was injured in the line-of-duty, the Village would not be subject to potential liability for paying Benefits Act health insurance benefits. The Pension Board acknowledged this during the colloquy between its counsel and one of the trustees of the board. They stated the following:

> "Mr. Reimer [Counsel for the Pension Board]: Now remember, even if you let the Village in, you will not be allowed to hear evidence about the [Benefits Act] impact or the workers' comp impact. For one, the workers' comp impact is obliviously over. That's off the table because of the Rule 23 decision. Secondly, it's not relevant for your purposes whether or not the Village is going to have to pay [Benefits Act] benefits, because [Benefits Act] doesn't come out of your coffers. It doesn't come out of the pension fund. Is it an impact to the Village? I'm sure it is.
>
> Mr. Wolfe [Trustee for the Pension Board]: Right, right.
>
> Mr. Reimer: No argument.
>
> Mr. Wolfe: But that's not something that we would consider."

¶ 25    First, the conclusion that the Pension Board would be unable to hear evidence about the effect of the workers' compensation on Portincaso's application was a misstatement of the law. It is true that orders entered under Illinois Supreme Court Rule 23 are generally not citable as precedent, however the rule makes an exception where, as is the case before this Court, the decision is being offered for collateral estoppel purposes. See Ill. S. Ct. R. 23(e)(1) (eff. July 1, 2011). Second, the Pension Board's acknowledgement that the Village's potential liability under the Benefits Act would impact the Village directly contradicts the Pension Board's conclusion that Villages interests would not be adversely affected by the proceedings. Third, in order for the Pension Board to reach the issue of collateral estoppel, the Village would need to have been made a party to the proceeding as it was the only party with an interest in raising the defense. See *Midwest Physician Group*, 304 Ill. App. 3d at 952 (collateral estoppel is an affirmative defense which must be pleaded by a party to be available).The Pension Board was serving as an adjudicative body rather than a party in the proceeding. See *Dempsey v. City of Harrisburg*, 3 Ill. App. 3d 696, 698 (1971) (finding that even though the Board of Trustees of the Policemen's Pension Fund was not a party to the proceedings before the Illinois Industrial Commission, by the most logical interpretation of the statute creating the Board it was an agency of the city and was bound by a judgment rendered against the city). Therefore, we cannot conclude that the Village's interests would not have been adversely impacted absent its participation in the Pension Board proceedings. Accordingly, the Pension Board's denial of

their petition to intervene was an abuse of discretion and must be reversed.

¶ 26                                    B. Collateral Estoppel

¶ 27        Next, we address Portincaso's contention that the Pension Board correctly determined that the requirements for collateral estoppel were not met. Collateral estoppel, also known as issue preclusion, is a branch of *res judicata. Wakehouse v. Goodyear Tire & Rubber Co.*, 353 Ill. App. 3d 346, 351 (2004). "The doctrine of collateral estoppel applies when a party, or someone in privity with a party, participates in two separate and consecutive cases arising on different causes of action and some controlling fact or question material to the determination of both causes has been adjudicated against that party in the former suit by a court of competent jurisdiction." *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 389-90 (2001). "The adjudication of the fact or question in the first cause will, if properly presented, be conclusive of the same question in the later suit, but the judgment in the first suit operates as an estoppel only as to the point or question actually litigated and determined and not as to other matters which might have been litigated and determined." (Emphasis omitted.) *Id.* at 390. "[T]he minimum threshold requirements for the application of collateral estoppel are: (1) the issue decided in the prior adjudication is identical with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." *Gumma v. White*, 216 Ill. 2d 23, 38 (2005); *Hurlbert v. Charles*, 238 Ill. 2d 248, 255 (2010). "Application of the doctrine of collateral estoppel must be narrowly tailored to fit the precise facts and issues that were clearly determined in the prior judgment." *Nowak*, 197 Ill. 2d at 390-91. Moreover, "[e]ven where the threshold elements of the doctrine are satisfied and an identical common issue is found to exist between a former and current lawsuit, collateral estoppel must not be applied to preclude parties from presenting their claims or defenses unless it is clear that no unfairness results to the party being estopped." *Talarico v. Dunlap*, 177 Ill. 2d 185, 191-92 (1997).

¶ 28        On appeal, the parties do not dispute whether applying collateral estoppel to Portincaso's claim would result in unfairness nor whether Portincaso was a party in the workers' compensation proceedings; therefore, we only consider (1) whether the issue decided in the workers' compensation suit was identical to the one before the Pension Board and (2) whether there was a final judgment on the merits.

¶ 29        Initially, we begin by addressing Portincaso's argument that at the time the Village filed its petition to intervene there was no final judgment on the merits from which the doctrine of collateral estoppel could be invoked. Our review of the record indicates that the Village did not raise the issue of collateral estoppel until it filed its motion for reconsideration. On July 8, 2013, Portincaso raised the issue of collateral estoppel in its objection to the Village's petition to intervene, and he was the only party to do so until the Village filed its motion to reconsider on March 26, 2014. Initially, the Village's first invocation of collateral estoppel was premature because it was prior to the expiration of Portincaso's 35 day time limit to appeal the workers' compensation decision to the supreme court; however, the Village renewed its motion on May 1, 2014, which was well after April 7, 2014, when Portincaso's time to file his appeal expired. Therefore, we find the record does not support Portincaso's argument that the Village's invocation of collateral estoppel was not based upon a final judgment on the merits.

- 7 -

¶ 30    Next, we turn to the question of whether the issue decided in the workers' compensation proceeding was identical to the one presented to the Pension Board. Portincaso contends that the issues are not identical and relies on the decisions in *Demski v. Mundelein Police Pension Board*, 358 Ill. App. 3d 499 (2005), *Oskroba v. Village of Hoffman Estates*, 404 Ill. App. 3d 692 (2010), *abrogated by Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, and *City of Chicago v. Illinois Workers' Compensation Comm'n*, 2014 IL App (1st) 121507WC.

¶ 31    In *Demski*, the plaintiff alleged that she injured her back while performing sit-ups during a physical fitness agility exam. *Demski*, 358 Ill. App. 3d at 500. The commission determined that she was entitled to workers' compensation benefits, finding a causal connection between the test and her condition of ill-being. *Id.* The pension board found that the agility test was not an act of duty within the meaning of the Pension Code and denied line-of-duty benefits. *Id.* at 502. The plaintiff appealed, however her argument was rejected on the basis that the issue of whether her injury arose from an act of duty as defined by section 5-113 of the Pension Code (40 ILCS 5/5-113 (West 2002) (defined in part as: "Any act of police duty inherently involving special risk, not ordinarily assumed by a citizen in the ordinary walks of life ***.")) was not in front of the Commission. *Demski*, 358 Ill. App. 3d at 502-03. The commission did not address the issue of risk associated with the agility test and was only asked to determine whether the plaintiff's injury arose out of and in the course of her employment. *Id.* Thus, the reviewing court found the issues were not identical.

¶ 32    *Demski* is distinguishable from the case before this Court because the pension board in *Demski* was required to determine whether the injury that occurred in the course of the plaintiff's employment also occurred during an act of duty as defined by the Pension Code, which was a question that was not considered by the workers' compensation commission. In the present case, both the Commission and the Pension Board were being asked to determine whether Portincaso was injured as a result of the 2010 arrest. The Commission specifically found that Portincaso's condition of ill-being was not causally related to the 2010 arrest, whereas the Pension Board addressed the same question and stated: "The Pension Board finds that [Portincaso] was involved in an 'act of police duty' when he injured his back on December 11, 2010." The discreet question of whether Portincaso had been injured during the 2010 arrest had already been previously answered and fully litigated in front of the Commission. Therefore, Portincaso was precluded from relitigating the same issue in front of the Pension Board.

¶ 33    In support of our conclusion, we find the decisions in *McCulla v. Industrial Comm'n*, 232 Ill. App. 3d 517 (1992) and *Dempsey v. City of Harrisburg*, 3 Ill. App. 3d 696 (1971), to be instructive. In *McCulla*, the claimant petitioned the firemen's pension board for a pension. 232 Ill. App. 3d at 521. Following a hearing, the board awarded a not-in-duty pension to the claimant. *Id.* A not-in-duty pension was awarded to those firefighters who became disabled as a result of any cause other than an act of duty. *Id.* The claimant did not appeal from this determination. *Id.* In the claimant's subsequent workers' compensation action the issue of causation was raised before the Commission. *Id.* The reviewing court found no difference between the issue adjudicated before the pension board and the issue of causation subsequently before the Commission. *Id.* It determined that the claimant had had a full opportunity to adjudicate the issue of the work-related nature of his disability before the pension board, and the pension board found his disability did not arise out of his duties as a firefighter. *Id.*

Consequently, the claimant was collaterally estopped from relitigating that issue before the Commission. *Id.*

¶ 34    Similarly, in *Dempsey*, the plaintiff in that case petitioned the Police Pension Fund for a pension on the theory her husband lost his life " 'in the performance of duty.' " *Dempsey*, 3 Ill. App. 3d at 697. The plaintiff's husband, the chief of police for the City of Harrisburg, died after returning home from a late night emergency call. *Id.* at 696. The plaintiff relied on the earlier decision of the Illinois Industrial Commission which found that the plaintiff's decedent had sustained accidental injuries arising out of and in the course of his employment resulting in his death. *Id.* at 697-98. That decision had become final, and the plaintiff asserted the commission's decision was *res judicata* and binding on the pension board. *Id.* The pension board found the decedent did not lose his life in the performance of duty and denied benefits. *Id.* at 697. The circuit court affirmed the decision of the board, however the reviewing court reversed finding the issues presented in both proceedings were for all intents and purposes identical. *Id.* at 697-98, The reviewing court found that the Workmens' Compensation Act provided benefits for accidental injuries arising out of and in the course of employment, while the Illinois Pension Code provided benefits for policemen who lost their lives in the performance of duty. *Id.* The court found the workers' compensation proceedings adjudicated all the factors necessary for a valid claim for a pension for loss of life in the performance of duty. *Id.* at 699. In other words, the issue of causation was fully adjudicated in the workers' compensation proceedings, and the City was precluded from relitigating that issue before the pension board. *Id.*

¶ 35    Portincaso also relies on the holding in *Oskroba v. Village of Hoffman Estates*, 404 Ill. App. 3d 692 (2010), *abrogated by Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, however that case dealt with the issue of a pension board deciding an issue that was outside the scope of what it was to consider under section 4-110 of the Pension Code (40 ILCS 5/4-110 (West 2006)). *Oskroba*, 404 Ill. App. 3d at 697. In the present case, neither the Commission nor the Pension Board decided an issue outside of its authority because they were both asked to consider whether Portincaso was injured as a result of the 2010 arrest.

¶ 36    Further, Portincaso's reliance on the decision in *City of Chicago v. Illinois Workers' Compensation Comm'n*, 2014 IL App (1st) 121507WC is misplaced. On the contrary, the holding in that case lends further credence to our conclusion in the instant case. In *City of Chicago*, the reviewing court determined that the doctrine of *res judicata* did not apply to the case, but the reviewing court found that collateral estoppel did apply to bar some of the claimant's claims. *Id.* ¶ 47. The court found the claimant was collaterally estopped from relitigating, in front of the Commission, the issues of whether he was disabled after August 3, 2009, and whether his work-related injuries rendered him unable to work as a paramedic after that date. *Id.* ¶ 53. The court noted that the retirement board of the firemen's annuity and benefit fund of Chicago decided that the claimant was fully recovered and fully able to perform his job as a paramedic by that date. *Id.* The court concluded that the claimant was collaterally estopped because the commission would have had to reach a contrary conclusion than the Fund in order to award TTD and TPD benefits. *Id.*

¶ 37    Similarly in the case before this Court, the Pension Board would have had to reach an opposite conclusion than the Commission in order to award Portincaso a line-of-duty pension. Therefore, the issue that each administrative body was being asked to consider was identical

for collateral estoppel purposes.

¶ 38                                    CONCLUSION

¶ 39        For the foregoing reasons, we affirm the judgment of the circuit court of Cook County to the extent that it found Portincaso was collaterally estopped from relitigating the issue of whether he was injured as a result of the December 11, 2010, arrest. We also find that the Pension Board abused its discretion in denying the Village's petition to intervene.

¶ 40        Affirmed.